RURAL ELECTRIC COMPANY, of Pine Bluffs, Wyoming, A Wyoming Non-Profit Corporation, Plaintiff,

v.

CHEYENNE LIGHT, FUEL & POWER COMPANY, A Wyoming Corporation, The City of Cheyenne, A Wyoming Municipality, The Cheyenne City Council, Virgil Slough, Ron Rogers, William Anderson, Carol Clark, Jane Crawford, Peter Salas, James Higday, Wanda McCue and Don Erickson, Individually, Defendants.

No. C82–0416–B.

United States District Court,
D. Wyoming.

March 11, 1983.

Henry F. Bailey, Todd S. Welch, Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo., for plaintiff.

Paul B. Godfrey, Godfrey & Sundahl, Thomas A. Nicholas, Hirst & Applegate, Cheyenne, Wyo., for defendants.

## MEMORANDUM DECISION AND ORDER OF DISMISSAL

BRIMMER, Chief Judge.

The Plaintiff, Rural Electric Company, of Pine Bluffs, Wyoming, brought suit against the City of Cheyenne, Wyoming, its mayor and city councilmen, and the Cheyenne Light, Fuel & Power Company, a private utility, alleging that (1) Cheyenne Light, Fuel & Power breached a contract dividing the service area in an industrial

park near Cheyenne, (2) that the mayor, councilmen and the City, by denying the Plaintiff a franchise for electric service, acted in violation of State law, (3) that the mayor, councilmen and City have illegally granted the Defendant utility a monopoly, (4) that Cheyenne Light, Fuel & Power violated federal antitrust laws by conspiring with the other Defendants to monopolize the electric service area, (5) that the municipal Defendants have engaged in an unlawful conspiracy to monopolize an electric service area in violation of the antitrust laws, and (6) that the Defendant Higday has engaged also in an unlawful conspiracy to violate the antitrust laws. The municipal Defendants (the mayor, councilmen and the City) and the utility Defendants (Cheyenne Light, Fuel & Power and its manager, Higday) have each moved to dismiss Plaintiff's complaint for lack of jurisdiction and failure to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure.

The Plaintiff is a nonprofit Wyoming public utility company furnishing electric service to rural residents in southeastern Wyoming, northeastern Colorado and western Nebraska. The Defendant Cheyenne Light, Fuel & Power is a Wyoming intrastate public utility company serving the City of Cheyenne and specified rural areas adjacent thereto with electric and gas utility service. Jurisdiction is claimed under 28 U.S.C. § 1331, relating to federal questions, and § 1337 relating to Acts of Congress regulating commerce and protecting trade and commerce against restraints and monopolies.

The first cause of action for breach of contract is a pendant jurisdiction claim, as are the second and third causes of action, claiming that the municipal Defendants acted in violation of State statutes and the Wyoming Constitution. Whether or not this Court has jurisdiction of the remaining three causes of action, which allege that the Defendants engaged in an unlawful combination or conspiracy to restrain trade in violation of 15 U.S.C. §§ 1–30, is the issue presented by Defendants' motions.

The facts alleged by the Plaintiff's complaint, and which are assumed to be true for the purposes of these motions, are that Plaintiff and Cheyenne Light, Fuel & Power Company on December 7, 1953 by written contract, thereafter approved by the Public Service Commission, agreed that what is now Lot 24 of Rocky Mountain Industrial Park would be part of the Plaintiff's certificated service area. In December 1978 the Rocky Mountain Industrial Park was annexed to the City of Cheyenne. Prior to March 11, 1982 the Defendants had numerous meetings with Quanex Corporation, a large industrial company, concerning location of an industrial facility on Lot 24 and utility service to it, but at a meeting with Plaintiff's representatives on March 11, 1982 the Plaintiff refused to give up this portion of its certificated area. The Plaintiff then asked the municipal Defendants to grant it a franchise to serve Lot 24 but on April 16, 1982 the Cheyenne City Council refused to grant Plaintiff a franchise and by resolution asked the Wyoming Public Service Commission to grant Cheyenne Light, Fuel & Power the right to serve Quanex Corporation. The Plaintiff's subsequent efforts to secure a franchise from the City failed. On August 2, 1982 the Wyoming Public Service Commission held a public hearing, at which the Plaintiff, the City of Cheyenne and Cheyenne Light, Fuel & Power were present, on the application of Defendant Cheyenne Light, Fuel & Power to serve the disputed area, and on September 27, 1982 the Public Service Commission of Wyoming by order granted Cheyenne Light, Fuel & Power authority to serve the Quanex Corporation. Cheyenne Light, Fuel & Power is the only utility company serving the City of Cheyenne and has a monopoly on the electric and gas utility business therein.

Paragraphs 43(a) and 43(b) of the Plaintiff's Complaint allege that Cheyenne Light, Fuel & Power has appeared three times before the Cheyenne City Council and that its agents have contacted members of the City Council to keep the Plaintiff from obtaining a franchise for electric service within the City. Plaintiff also al-

leges that the municipal defendants as well as the Defendant Higday have engaged "in an unlawful combination and conspiracy" to restrain and monopolize interstate trade. In argument Plaintiff's counsel stated that he hoped to discover proof of such allegations in the course of discovery.

Mr. Justice Cardozo observed, in his dissent in *U.S. v. Constantine*, 296 U.S. 287, 299, 56 S.Ct. 223, 228, 80 L.Ed. 233 (1935), "There is a wise and ancient doctrine that a Court will not inquire into the motives of a legislative body or assume them to be wrongful." Alexander M. Bickel in "The Least Dangerous Branch" cites this as the established view (p. 208). *Areeda & Turner on Antitrust*, Vol. II, p. 36, summarize their conclusions respecting efforts of collaborators to use the machinery of government to maintain or strengthen market power as follows:

"(1) A specific purpose to secure anticompetitive governmental action and to burden rivals cannot itself make activities wrongful. Monopolists or collaborators are privileged to pursue their private and selfish objectives through legislation, adjudication, or executive and administrative machinery.

(2) Conduct thus immune from antitrust attack would not be immune when the governmental action is a "mere sham" or in bad faith. In the legislative context, however, such bad faith is virtually beyond proof and should ignored, at least presumptively and perhaps conclusively. It will also be difficult to prove in dealings with the executive or administrative arms of government. Bad faith is more readily detected, though still elusive in the context of administrative adjudication.

(3) The employment of improper means in dealing with government is not privileged. The courts, however, hesitate to use anti-trust law to define what is proper in the political arena, although this hesitation need not have the effect of immunizing from antitrust challenge conduct that is already "legally proscribed" apart from antitrust law. The criteria of impropriety varies according to the governmental body involved; there is, for example, very wide latitude for questionable activity in the legislative context. Moreover, there are significant doubts about the causal connection between the impropriety and the anticompetitive results of government action. Such doubts are great enough to warrant antitrust law's ignoring improprieties altogether in the legislative context. In other contexts, improprieties may be considered by the antitrust tribunal, subject to the cautions slated elsewhere about significance and causation."

In *United Mine Workers v. Pennington*, 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965) the Supreme Court held that,

"Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal either standing alone or as a part of a broader scheme itself violative of the Sherman Act."

The Supreme Court held in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) that a state marketing program did not violate the Sherman Act because it derived its authority from the "legislative command of the state" and the Court found nothing in the Sherman Act or its history suggesting that its purpose was to restrain a state or its agents. Article XIII, Section 4 of the Wyoming Constitution provides

"No street passenger railway, telegraph or electric light line shall be constructed within the limits of any municipal organization without the consent of its local authorities."

The Wyoming Supreme Court in *Tri-County Electrical Association Inc. v. City of Gillette*, 584 P.2d 995 (Wyo., 1978), held that this provision gave cities extensive control over electric utilities within their boundaries. Here, the Plaintiff alleges (1) that the disputed area is within the city's boundaries, and (2) that the City Council wanted to keep the City of Cheyenne "under one power company" (Complaint, para-

graph 15). The State Legislature in § 37–2–205(b), W.S.1977, provided further that no public utility shall exercise a right or franchise without first obtaining from the Public Service Commission a certificate of convenience and necessity.

We must conclude that the action of the City of Cheyenne as well as of the Public Service Commission of Wyoming, is immune from suit under the Sherman Act. Under the "state action" doctrine enunciated in *Parker,* the actions of the City of Cheyenne, the Cheyenne City Council, and the Public Service Commission are immune from liability under the antitrust laws if they were taken pursuant to state policy. *Pueblo Aircraft Service, Inc. v. City of Pueblo, Colo.,* 679 F.2d 805 (10th Cir.1982); *Lafayette v. Louisiana Power and Light Company,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978).

> This does not mean, however, that a political subdivision necessarily must be able to point to a specific, detailed legislative authorization before it properly may assert a Parker defense to an antitrust suit.... [A]n adequate state mandate for anticompetitive activities of cities and other subordinate governmental units exists when it is found 'from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of.' *Lafayette,* supra, p. 415, 98 S.Ct. at 1138.

To be exempt from antitrust scrutiny the municipal action must be "in furtherance or implementation of clearly articulated and affirmatively expressed state policy." *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 55, 102 S.Ct. 835, 842, 70 L.Ed.2d 810 (1982).

In *Tri-County Electrical Association, Inc.,* supra, p. 1001, the Wyoming Supreme Court recognized the broad powers conferred upon municipal governments to grant franchises to utility companies, and noted that "franchises are special privileges conferred by the government on individuals, which do not belong to the citizens of the country generally of common right; no franchise can be held which is not derived from the law of the state." It appears from an application of the state action doctrine to the laws of the State of Wyoming, as found in Article XIII of the Wyoming Supreme Court in Tri-County, that the City of Cheyenne is immune from antitrust liability in this matter, and the causes of action against it on this basis must be dismissed.

Even if the Plaintiff's allegations that various of the Defendants collaborated to influence the decision-making of public bodies are true, such activity would not amount to a violation of the antitrust laws. "[N]o violation of the [Sherman] Act can be predicated upon mere attempts to influence the passage or enforcement of laws." *Eastern Railroad Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 135, 81 S.Ct. 523, 528, 5 L.Ed.2d 464 (1961). Neither does the Sherman Act "prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Noerr,* supra, p. 136, 81 S.Ct. at 529.

The only exception to this general principle recognized by the *Noerr* court is when the action complained of is not legitimately directed at influencing official action, but is instead a mere "sham," frivolous in its nature, designed solely to have a detrimental effect upon the business of a competitor or potential competitor. *Noerr,* p. 144, 81 S.Ct. at 533. Areeda and Turner point out, however, that such allegations are virtually impossible to prove, and may, for practical purposes, be ignored. *Areeda and Turner,* supra, paragraph 203. They also point out an obvious fact of significance in this action. In attempting to categorize an activity as merely a "sham" lobbying, hiding behind the most frivolous of contentions, it must be remembered that "in a political forum, almost no contention can be characterized categorically as frivolous.... [A] contention cannot, by definition, be frivolous when it is actually adopted by a legislature, administrator, or court." *Id.,* para-

graph 203(c). See also *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers*, 542 F.2d 1076, 1079 (9th Cir.1976).

The Supreme Court, in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) reiterated its earlier stances in *Noerr* and *Pennington*.

> We conclude that it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors. *Id.*, p. 510–511, 92 S.Ct. p. 611–612.

In *California Motor Transport*, supra, the Supreme Court also held that the exercise of the above rights could not be taken in such a manner as was designed to foreclose one's competitors from meaningful access to the same public bodies. Plaintiff herein has raised no such issue, and cannot be heard to complain that it was unable to petition the same public officials as certain of the Defendants. To the contrary, the Plaintiff is merely dissatisfied with the actions taken by those public bodies.

"To be sure, the legislature may be mistaken or unaware of the consequences of its actions, or it may be responding to political pressures not truly reflecting 'the public interest,' but the antitrust court may not reappraise the legislature's assessment of the public welfare." *Areeda and Turner*, supra, paragraph 202b. This sound advice, concurring as it does with the wisdom of Justice Cardozo, will be heeded by this Court. The allegedly violative activities of the Defendants in influencing the granting of a franchise to the Defendant Cheyenne Light, Fuel & Power were apparently successful attempts to persuade a public body to exercise its powers in a particular way. Such activities, even if selfishly motivated, do not violate the Sherman Act if endorsed

ultimately by a public body. This Court will not endeavor to speculate upon the motivations of the City Council, the City of Cheyenne, or the Public Service Commission in acting as they did. Even if the conduct of various of the Defendants was unethical in interacting as it is alleged they did in influencing the City Council, such activity is also immune from suit under the antitrust laws when conducted in the context of lobbying the City Council as a legislative body. *Metro Cable Co. v. CATV of Rockford*, 516 F.2d 220 (7th Cir.1975).

It is clear that the fourth, fifth, and sixth claims of the Plaintiff's complaint fail to state a claim upon which relief can be granted by this Court. Pursuant to Federal Rules of Civil Procedure 12(b)(6), these claims are properly dismissed from this action. Since the only basis of jurisdiction in this Court rests upon these claims, the pendant state claims contained in the first, second, and third causes of action must also be dismissed for lack of subject matter jurisdiction.