762 F.2d 847
 1985-1 Trade Cases 66,629
 RURAL ELECTRIC COMPANY, of Pine Bluffs, Wyoming, a Wyoming
nonprofit corporation, Plaintiff-Appellant,
v.
CHEYENNE LIGHT, FUEL & POWER COMPANY, a Wyoming corporation,
the City of Cheyenne, a Wyoming Municipality, the Cheyenne
City Council, Virgil Slough, Ron Rogers, William Anderson,
Carol Clark, Jane Crawford, Peter Salas, James Higday, Wanda
McCue and Don Erickson, Individually, Defendants-Appellees.
 No. 83-1415.
 United States Court of Appeals,
Tenth Circuit.
 May 20, 1985.
 
 Todd S. Welch of Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo. (Henry F. Bailey, Jr., with him on brief), Cheyenne, Wyo., for plaintiff-appellant.
 George E. Powers, Jr. of Godfrey & Sundahl, Cheyenne, Wyo. (Paul B. Godfrey, on brief), Cheyenne, Wyo., for defendants-appellees Cheyenne Light, Fuel & Power Co. and James Higday.
 Thomas A. Nicholas of Hirst & Applegate, Cheyenne, Wyo., for defendants-appellees The City of Cheyenne, The Cheyenne City Council, Virgil Slough, Ron Rogers, William Anderson, Carol Clark, Jane Crawford and Peter Salas.
 Before SEYMOUR and SETH, Circuit Judges, and ELLISON, District Judge*.
 SETH, Circuit Judge.
 
 
 1
 This is an action brought by the appellant Rural Electric Company against the Cheyenne Light, Fuel & Power Company, the City of Cheyenne, the Cheyenne City Council and seven individuals. The complaint alleged several causes of action. The first three described state law claims--breach of contract, and violation of the Wyoming Constitution and statutes. The other causes allege Sherman Act violations. The defendants filed motions directed to the federal claims moving for dismissal for a failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for lack of jurisdiction. The motions were granted and the pendent state claims were dismissed. 602 F.Supp. 105 (D.C.Wyo.1983).
 
 
 2
 Both utilities wanted to provide electricity to a particular location where an industrial plant was to be built, and both sought authority to do so. The location was in the City of Cheyenne. The defendant Cheyenne Light, Fuel & Power Company served all consumers of electricity in Cheyenne and some areas beyond the City limits. Plaintiff Rural Electric served consumers in the adjoining states and areas adjacent to or near Cheyenne.
 
 
 3
 The particular location in issue, referred to as Lot 24, was the subject of a contract between the two utilities in 1952 when the service areas were allocated to each by agreement. In the agreement Lot 24 was to be served by Rural Electric. However, the area was later annexed to the City. This agreement is the subject of the breach of contract cause.
 
 
 4
 Rural Electric made a strong effort to obtain the right to serve Lot 24. This included several applications to the City for a franchise and efforts to persuade the Wyoming Public Service Commission to issue to it a certificate of public convenience and necessity. It was not successful in its efforts. Instead the City issued the Cheyenne Light, Fuel & Power Company a nonexclusive franchise and the Public Service Commission issued to Cheyenne Light a certificate of public convenience and necessity.
 
 
 5
 It is apparent that during the course of the negotiations and applications the City was favorable to Cheyenne Light. The City intervened before the Public Service Commission on behalf of Cheyenne Light. The City franchise was granted to Cheyenne Light, as expressed by the City, to keep the City "under one power company."
 
 
 6
 The complaint asserts that the defendants all sought individually and in concert to keep Rural Power out of Cheyenne and to have it served only by Cheyenne Light, thus the anti-competitive conspiracy causes of action.
 
 
 7
 The dismissal by the trial court and this appeal center on the "state action" immunity doctrine described in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315. There the Court held that a state program fixing prices did not violate the Sherman Act because the Act "must be taken to be a prohibition of individual and not state action," and that the Act "gives no hint that it was intended to restrain state action or official action directed by a state."
 
 
 8
 The "state action" exception was further refined in Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572, Cantor v. Detroit Edison Co., 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141, Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810, Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364, and Community Communications Co. v. Boulder, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810. In Lafayette the Court in part said (quoting in part from 532 F.2d 431, 434 (5th Cir.) ):
 
 
 9
 "This does not mean, however, that a political subdivision necessarily must be able to point to a specific, detailed legislative authorization before it properly may assert a Parker defense to an antitrust suit.... [A]n adequate state mandate for anti-competitive activities of cities and other subordinate governmental units exists when it is found 'from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of.' "
 
 
 10
 435 U.S. at 415, 98 S.Ct. at 1138.
 
 
 11
 In the case before us there are specific directives and statements of policy by the State of Wyoming as compared to the Home Rule authority in Community Communications. See also Pueblo Aircraft Service v. Pueblo, Colorado, 679 F.2d 805 (10th Cir.).
 
 
 12
 The Wyoming Constitution in Article 13, Sec. 4, provides:
 
 
 13
 "No street passenger railway, telegraph, telephone or electric light line shall be constructed within the limits of any municipal organization without the consent of its local authorities."
 
 
 14
 The Wyoming statutes at Sec. 37-2-205(b), provide:
 
 
 15
 "No public utility shall henceforth exercise any right or privilege or obtain a franchise or permit to exercise such right or privilege from a municipality or county, without having first obtained from the [public service] commission a certificate that public convenience and necessity require the exercise of such right and privilege...."
 
 
 16
 The constitutional and statutory provisions thus interlock and action by both entities is required. The state constitution prohibits monopolies in general but the particular provision must prevail.
 
 
 17
 This is a somewhat unusual combination of policy statements or directives which lead to the conclusion that the operating rights of Cheyenne Light was a consequence of "state action" under Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364. The state directives are to the separate and independent governmental entities with authority over the subject and which acted pursuant to such directives.
 
 
 18
 The Supreme Court has recently, and since this case was submitted on appeal, handed down an opinion which treats several of the issues in this case. The Court in Town of Hallie v. City of Eau Claire, U.S. ----, 105 S.Ct. 1713, 85 L.Ed.2d 24, considers whether the statute must compel the municipality to take the action in issue. The Court distinguishes the cases where private entities are claiming the state action exemption and where a municipality makes such a claim. It concludes that no compulsion is required as to municipalities. We have before us both a private corporation, a municipality, and individuals. We hold that the statute in its application to the City is probably enough but in any event sufficient compulsion is shown if that be any longer required.
 
 
 19
 Again, in Town of Hallie the Court said as to certain statements of the plurality in City of Lafayette:
 
 
 20
 "In sum, we conclude that the Wisconsin statutes evidence a 'clearly articulated and affirmatively expressed' state policy to displace competition with regulation in the area of municipal provision of sewerage services. These statutory provisions plainly show that 'the legislature contemplated the kind of action complained of.' City of Lafayette, supra, [435 U.S.] at 415 [98 S.Ct. at 1138] (quoting the decision of the Court of Appeals, 532 F.2d 431, 434 (CA5 1976). This is sufficient to satisfy the clear articulation requirement of the state action test." (Footnote omitted.)
 
 
 21
 We again apply this clarification to the case before us where the "actor" is a municipality--where the result could not be obtained without the action taken by the City as in Hallie. In Town of Hallie the Court concluded that the statute there concerned met the "clearly articulated" test, and said:
 
 
 22
 "In California Retail Liquors Dealers Assn. v. Midcal Aluminum, Inc., 445 U.S. 97 [100 S.Ct. 937, 63 L.Ed.2d 233] (1980), a unanimous Court held that supervision is required where the anticompetitive conduct is by private parties. In City of Boulder, however, the most recent relevant case, we expressly left this issue open as to municipalities. 455 U.S. at 51-52, n. 14 [102 S.Ct. at 840-841, n. 14]. We now conclude that the active state supervision requirement should not be imposed in cases in which the actor is a municipality."
 
 
 23
 We hold that the statutes here concerned also meet that test.
 
 
 24
 The plaintiff's complaint contains several allegations that the Cheyenne Light, Fuel & Power Company with others sought to influence the City Council and individual members of the Council. There were similar allegations as to the petitions and hearings before the Public Service Commission. We agree with the trial court's analysis of these allegations and likewise find them within the doctrine expressed in Eastern Railroad Presidents Conference v. Noerr Motor Freight, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464.
 
 
 25
 These allegations also do not raise an issue under the exception to the Noerr-Pennington doctrine. No facts are alleged to show that the lobbying was a sham or only to damage Rural Electric. The complaint alleged no facts to bring the complaint outside the Court's statement in California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, at 510-511, 92 S.Ct. 609, at 611-612, 30 L.Ed.2d 642:
 
 
 26
 "We conclude that it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors."
 
 
 27
 AFFIRMED.
 
 
 
 *
 Honorable James O. Ellison, United States District Judge for the Northern District of Oklahoma, sitting by designation