Walter BRIGHT and Ilene Bright d/b/a Ace Ambulance Service, Plaintiffs,

v.

OGDEN CITY, a Utah Municipal Corporation, and Moss Ambulance Service, Inc., a Utah corporation, d/b/a Mountainwest Ambulance Service, Defendants.

No. 83–NC–0137A.

United States District Court, D. Utah, N.D.

Dec. 23, 1985.

As Corrected May 20, 1986.

Peter C. Collins, Bugden, Collins & Keller, Salt Lake City, Utah, for plaintiffs.

David S. Kunz, Kunz, Kunz & Hadley, Ogden, Utah, for defendant.

MEMORANDUM OPINION AND ORDER ON DEFENDANT MOSS AMBULANCE SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

## I. INTRODUCTION

On June 23, 1983, Walter and Ilene Bright d/b/a Ace Ambulance [hereinafter "Ace Ambulance"] initiated the present action, alleging violations of federal and state antitrust laws by Ogden City and a private ambulance service, Moss Ambulance Service, Inc. d/b/a Mountainwest Ambulance Service [hereinafter "Moss Ambulance"].

On February 19, 1985, the plaintiffs and defendant Ogden City entered into a stipulation dismissing with prejudice all claims against Ogden City. *See* Stipulation, Motion and Order of Dismissal With Prejudice (Feb. 19, 1985).

Following the dismissal of Ogden City, the plaintiff submitted a Motion for Partial Summary Judgment asking the court to rule as a matter of law that the remaining defendant, Moss Ambulance, violated sections 1 and 2 of the Sherman Act as set forth in the first, second, and third causes of action of the plaintiff's complaint.

The remaining defendant, Moss Ambulance, submitted a Motion for Summary Judgment based on alternative theories that it was immune from antitrust liability either because the Ogden City ordinance was a "state action" or because their involvement with the city was protected under the *Noerr-Pennington* doctrine.

For the reasons stated herein, the court denies the plaintiff's motion for partial summary judgment and grants the defendant's motion for summary judgment as to the first, second and third causes of action and dismisses without prejudice the fourth through seventh causes of action.

## II. FACTS

This litigation concerns ambulance service in Ogden City. Until June, 1963, Ogden engaged in its own city-operated ambulance service. At that time, the city decided to establish a franchise to secure the services of a private ambulance company. After notice and several hearings, the city adopted an Ordinance granting what was termed a "non-exclusive franchise"[1] to Moss Ambulance Company effective February 1, 1964 to provide ambulance service within Ogden City.

On June 18, 1968, Walter Bright submitted a petition to the city to allow him to extend Ace Ambulance's service area to include Ogden City. The City Council directed the City Manager to investigate the need for additional ambulance service. On August 8, 1968, Ace Ambulance's petition came before the city council. The petition was denied on the ground that permitting two ambulance services to operate within the city would not be economically feasible.

In January, 1974, Moss Ambulance petitioned the City Council for an extension of its ambulance franchise for a term of 10 years. During the same time, Ace Ambulance again petitioned the City Council to allow it to do business in Ogden City. On January 24, 1974, the Council voted to extend the franchise of Moss Ambulance service for another 10 years.

On June 18, 1981, Moss Ambulance petitioned the City Council for a proposed amendment to the franchise ordinance. The proposed amendment was referred to the City Manager and Corporation Counsel for review. On July 30, 1981, the proposed amendment came before the City Council. Ace Ambulance appeared to protest the proposed amended ordinance. The City Council directed Corporate Counsel to draft an ordinance to be presented for first reading and a public hearing. The Council further directed the City Manager to review the services of the two ambulance companies and report back to the Council. On August 20, 1981, a public hearing was held on the proposed ordinance. Attorneys for both Moss Ambulance and Ace Ambulance made presentations before the Council. City Ordinance No. 35–81 was then passed by the City Council, extending the ambulance franchise grant to Moss Ambulance for an additional 10 years.

On February 18, 1982, Ace Ambulance petitioned the City Council, alleging that Moss Ambulance was not complying with the provisions of the franchise ordinance. The City Manager conducted an investigation. On March 4, 1982, the City Manager reported to the City Council regarding the complaints, and attorneys for Ace and Moss addressed the Council. The City interpreted the franchise as requiring two fully manned ambulances on 24-hour call. Moss agreed to comply with this interpretation.

## III. ANALYSIS

### A. State Action Doctrine

Defendant argues that it is protected from antitrust liability in its ambulance operations under the state action doctrine set forth in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Under *Parker*, anticompetitive actions by a state

---

1. Although the franchise expressly states that it is "non-exclusive," the city can grant a franchise to another Ambulance service only if Moss Ambulance violates the terms of the franchise. *See* Ogden City Ordinance No. 35–81 § 5.06.140.

are immune from the reach of federal antitrust laws. In support of its argument, defendant cites the recent Supreme Court case of *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). *Hallie* and predecessor cases extend *Parker* immunity to include anticompetitive actions by municipalities if done pursuant to a " 'clearly articulated and affirmatively expressed' state policy to displace competition." *Town of Hallie*, 105 S.Ct. at 1717, 1719.

Ogden City is no longer a party in this action. Since the court finds that Moss Ambulance's participation in the Ogden City Ambulance Ordinance and state licensing proceedings is protected activity under the *Noerr-Pennington* doctrine, the court need not consider whether the actions of Ogden City or Moss Ambulance would be protected under the "state action" doctrine.

## B. The Noerr-Pennington Doctrine

The plaintiff alleges that defendant Moss Ambulance violated antitrust laws by "encouraging, urging and cajoling defendant Ogden City." *See* Complaint, ¶¶ 25, 36. Even if the plaintiff's allegations are true, such activity does not amount to a violation of antitrust laws. "[N]o violation of the [Sherman] Act can be predicated upon mere attempts to influence the passage or enforcement of laws." *Eastern Railroad Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 135, 81 S.Ct. 523, 528, 5 L.Ed.2d 464 (1961).[2] This doctrine has been said to rest on "twin pillars:"

(1) the vital role played by free-flowing communication in a representative democracy, and

(2) the first amendment right to petition the government for the redress of grievances.

*In re Airport Car Rental Antitrust Litigation*, 693 F.2d 84, 86 (9th Cir.1982), *cert. denied*, 462 U.S. 1133, 103 S.Ct. 3114, 77 L.Ed.2d 1368 (1983) (*citing City of Lafay-*

ette v. Louisiana Power & Light Co., 435 U.S. 389, 399, 98 S.Ct. 1123, 1129, 55 L.Ed.2d 364 (1978); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972)).

**a. The Relationship Between** *Noerr-Pennington* **and** *Parker*. Application of the *Noerr-Pennington* doctrine to a private defendant does not depend upon a finding that the government action sought by the private party is "state action" protected from antitrust liability by *Parker*. Frequently, antitrust courts tend to emphasize the similarities between the two doctrines. The two doctrines are distinct, however. *Noerr-Pennington* is rooted in the first amendment right of petition and the importance of free-flowing communication to government decision making, *City of Lafayette*, 435 U.S. at 399, 98 S.Ct. at 1129, while *Parker* is based upon principles of federalism and state sovereignty, 435 U.S. at 400, 98 S.Ct. at 1130. The Ninth Circuit, in *In re Airport Car Rental Antitrust Litigation*, emphasized that the two doctrines should be considered as separate from one another:

[Some] confuse[ ] *Noerr-Pennington* with the very different doctrine of state-action immunity recognized in *Parker v. Brown*.... When private parties persuade state officials to effectuate some anticompetitive policy, an antitrust plaintiff might name both the private parties and the State as defendants and thus implicate both *Noerr-Pennington* and *Parker*. Because their liability is governed by "two separate doctrines," one defendant might be liable and the other exempt. It would be inapt to require symmetry.

*In re Airport Car Rental Antitrust Litigation*, 693 F.2d at 87 (citations omitted). Since the doctrines are separate and based on different considerations, the private defendant may be protected under the *Noerr-*

---

**2.** Later Supreme Court cases further elaborated on this doctrine, *see United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), which has become known as the *Noerr-Pennington* doctrine.

*Pennington* doctrine even if the municipal defendant's conduct is not "state action," protected under *Parker*.[3]

*Mercy-Peninsula Ambulance, Inc. v. San Mateo County*, 592 F.Supp. 956 (N.D. Cal.1984), demonstrates this conclusion. The plaintiff in *Mercy-Peninsula* alleged that the County, in conspiracy with the private defendants, refused to certify as paramedics any ambulance personnel other than those employed by two ambulance services. The court found that *Parker* immunity might not cover actions of the county taken prior to the enactment of a state Paramedic Act in 1981. *Id.* at 964. As a result, the court denied the County's motion to dismiss the antitrust action with respect to conduct in which the County allegedly engaged prior to 1981. On the other hand, the court found that the *Noerr-Pennington* doctrine immunized the private defendants as to actions taken both before and after 1981. As a result, the court granted the private defendants' motion to dismiss as to the entire suit. *Id.* at 967.

The Fifth Circuit has reached a similar conclusion, separating *Noerr* immunity from determinations of whether an action was authorized by state statute:

> [I]n the administrative context, an ultimate determination that agency action sought was unauthorized by statute should not remove protection for petitioning conduct directed to the agency to obtain that action.

*Greenwood Utilities Comm'n v. Mississippi Power Co.*, 751 F.2d 1484, 1500 (5th Cir.1985).

In the case before this court, there may be a question regarding whether Ogden City would be protected from antitrust liability under the *Parker* "state action" exemption.[4] This uncertainty does not prevent the private ambulance service from seeking immunity under the *Noerr-Pennington* doctrine.

**b. Commercial Exception to *Noerr-Pennington*.** Plaintiff, Ace Ambulance, argues that "[t]he focus of the *Noerr-Pennington* line of authority is uniformly a concerted activity of those seeking to influence governmental policy, not on contracts, combinations, and conspiracies to which the governmental entity itself is a party." Plaintiffs' Memorandum in Opposition to Defendant Moss Ambulance Service, Inc.'s Motion for Summary Judgment, at 11 (July 11, 1985) [hereinafter "Plaintiffs Memorandum Opposing Summary Judgment"]. The plaintiff suggests that private defendants who lobby for "long-term business relationships" such as the ambulance franchise ordinance enacted by the Ogden City Council cannot be protected under the *Noerr-Pennington* doctrine. *Id.* at 11–12. This argument is without merit.

In *Rural Electric Co. v. Cheyenne Light, Fuel & Power Co.*, 762 F.2d 847 (10th Cir.1985), the Tenth Circuit applied the *Noerr-Pennington* doctrine to the private defendants under facts strikingly similar to the facts of this case. In *Rural Electric*, two private power companies petitioned Cheyenne City for a franchise to provide power to a an industrial area recently annexed by the City. Prior to the annexation, Rural Electric was under contract to provide electricity to the area. Upon annexation, despite efforts by Rural Electric, Cheyenne City granted Cheyenne Light a franchise to service the area. Af-

---

**3.** Professor Bern stressed the importance of this conclusion: "[T]o condition *Noerr* immunity on the ultimate validity of the governmental action taken would unduly impinge upon the first amendment right of petition. A conditioning of *Noerr* on *Parker* would inject so much uncertainty into the petitioning process that a chilling effect on its exercise is absolutely predictable." Bern, *The Noerr-Pennington Immunity for Petitioning in Light of City of Lafayette's Restriction on the State Action Immunity*, 1980 **Ariz.St.L.J.** 279, 296. *See also* 1 **P. Areeda & D. Turner,**

*Antitrust Law*, ¶¶ 202b, 202c (1978 & 1982 Supp.).

**4.** "[T]o obtain exemption [under *Parker*], municipalities must demonstrate that their anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985) (citation omitted).

ter granting the franchise, the City then intervened before the Wyoming Public Service Commission [PSC] on behalf of Cheyenne Light. Cheyenne Light was subsequently issued a certificate of public convenience and necessity from the PSC. Despite the City's grant of a "franchise" to Cheyenne Light and the City's admittedly "favorable" treatment (*Id.* at 849) of Cheyenne Light, the Court nonetheless found that Cheyenne Light's efforts to influence the City Council were "within the doctrine expressed in [*Noerr*]." *Id.* at 850.

Several circuits have expressly abandoned the notion that lobbying public bodies to obtain commercial agreements removes a private defendant from *Noerr-Pennington* protection. The Fifth Circuit, in *Greenwood Utilities*, stated: "We reject any notion that there should be a commercial exception to *Noerr-Pennington.*" *Greenwood Utilities*, 751 F.2d at 1505. In another Fifth Circuit case decided after *Greenwood Utilities*, a taxicab company brought a suit against Houston City and Yellow Cab Company, alleging a conspiracy in violation of the Sherman Act. Houston had granted Yellow Cab an exclusive concession over passenger service at the Houston Intercontinental Airport. The Fifth Circuit upheld the district court's dismissal of the action against Yellow Cab based on *Noerr-Pennington* immunity. *Independent Taxicab Drivers' Employees v. Greater Houston Trans. Co.*, 760 F.2d 607, 613 (5th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985). The Court stated:

> In [*Greenwood Utilities*], we recently held that *Noerr-Pennington* extends to situations where the government enters into a contractual relationship with a private entity, at least in situations "where the government engages in a policy decision and at the same time acts as a participant in the marketplace." We expressly rejected the notion that *Noerr-Pennington*'s first amendment and statutory roots are not sympathetic to such agreements; even if they can be properly characterized as essentially "commercial."

*Independent Taxicab*, 760 F.2d at 612–613, citing *Greenwood Utilities*, 751 F.2d at 1504–1506. Upon finding that *Noerr-Pennington* immunity covered the private taxicab company, the court affirmed the lower courts order dismissing the complaint against Yellow Cab.

■ The Ninth Circuit has similarly expressly held: "There is no commercial exception to *Noerr-Pennington.*" *In re Airport Car Rental Antitrust Litigation*, 693 F.2d at 88 (statement made after the court reviewed cases which seem "at first glance to support a commercial exception to *Noerr-Pennington*" *Id.* at 87). Although not expressly stated by the Tenth Circuit, *Rural Electric* leads to a similar conclusion. The fact that Moss was seeking a franchise to operate a commercial ambulance service does not prevent application of *Noerr-Pennington* to Moss' activities.

■ **c. The Sham Exception to Noerr-Pennington.** The plaintiffs argue that "the various activities of [Moss] in seeking to enforce the subject ordinances against plaintiffs fall within the sham exception." Plaintiffs' Memorandum Opposing Summary Judgment at 13. They further allege that "they will be able to prove that the enforcement activities of the remaining defendant alleged in the Complaint were for the *purpose* of increasing the remaining defendant's stranglehold on the private ambulance service business in Weber County." *Id.* at 14 (emphasis in original). Accepting this later statement of the plaintiffs' as true for purposes of summary judgment, the defendant's activities still do not fall within the "sham" exception to the *Noerr-Pennington* doctrine.

The District Court in *Rural Electric* pointed out the narrow confines of the "sham" exception:

> The only exception to [the doctrine] recognized by the *Noerr* court is when the action complained of is not legitimately directed at influencing official action, but is instead a mere "sham," frivolous in its nature, designed solely to have a detrimental effect upon the business of a

competitor or potential competitor. Areeda and Turner point out, however, that such allegations are virtually impossible to prove, and may, for practical purposes, be ignored. [1 **P. Areeda & D. Turner,** *supra* ¶ 203, p. 41]. They also point out an obvious fact of significance in this action. In attempting to categorize an activity as merely a "sham" lobbying, hiding behind the most frivolous of contentions, it must be remembered that in a political forum, almost no contention can be characterized categorically as frivolous.... [A] contention cannot, by definition, be frivolous when it is actually adopted by a legislature, administrator, or court. [*Id.* at ¶ 203(c), p. 44].

*Rural Electric Co. v. Cheyenne Light, Fuel & Power Co.,* 602 F.Supp. 105, 108 (D.Wyo.1983) (some citations omitted), *aff'd,* 762 F.2d 847, 850 (10th Cir.1985) (the Court of Appeals stated, "We agree with the trial court's analysis of these allegations [against the private defendant] and likewise find them within the doctrine expressed in [*Noerr*]").

Nor do the plaintiffs' allegations of conspiracy [*See, e.g.,* Complaint, ¶¶ 11–15; Plaintiffs' Memorandum Opposing Summary Judgment at 11–12], prevent the entry of summary judgment on behalf of the defendant. The plaintiff in *Rural Electric* alleged the existence of conspiratorial relationships between the private defendants and public officials. The District Court found these allegations to be insufficient to prevent dismissal of the claims:

> Even if the conduct of various of the Defendants was unethical in interacting as it is alleged they did in influencing the City Council, such activity is also immune from suit under the antitrust laws when conducted in the context of lobbying the City Council as a legislative body.

*Rural Electric,* 602 F.Supp. at 109. The Ninth Circuit in *Mercy-Peninsula* stated: "[C]onspiracy [under *Noerr-Pennington*] implies action outside the scope of official duties, such as acts undertaken for personal gain. This does not extend to action which an official has been persuaded are in the public's interest." *Mercy-Peninsula,* 592 F.Supp. at 967.

Professor Areeda's discussion of conspiracy claims is useful in evaluating the claims made by the plaintiffs in this case:

> Vague and unsupported conspiracy allegations deserve very little respect from the antitrust court, given (1) the temptation for a party before a governmental body to claim an antitrust conspiracy whenever the decision is disappointing, (2) the modest likelihood that bad faith or corruption can be proved, and (3) the potential chilling effect antitrust proceedings might have on the operations of government.

Areeda, *Antitrust Immunity for "State Action" After Lafayette,* 95 **Harv.L.Rev.** 435, 452 (1981) (*quoted with approval in Llewellyn v. Crothers,* 765 F.2d 769, 775 (9th Cir.1985)). *See also In re Airport Car Rental Antitrust Litigation,* 766 F.2d 1292 (9th Cir.1985) (affirming district court's grant of summary judgment on behalf of private defendants despite allegations of price fixing, misrepresentation, bribery and coercion). This court, like the courts in *Rural Electric* and *Llewellyn,* finds the plaintiffs' vague allegations of conspiracy, which fail to show improper conduct on the part of the government officials, to be insufficient to withstand the defendant's motion for summary judgment.

## IV. CONCLUSION

■ This court finds that Moss Ambulance Service's actions in connection with obtaining and retaining the ambulance franchise in Ogden City are similar in scope and nature to the activities carried on by Cheyenne Light in the *Rural Electric* case. Like the district court and the Tenth Circuit in *Rural Electric,* and for the reasons detailed above, this court finds that Moss Ambulance Service is immunized from the reach of federal antitrust laws under the facts of this case. The plaintiffs' motion for partial summary judgment is denied. Summary judgment for the defendant is granted as to the first, second and third causes of action. Since the basis for jurisdiction in this court lies in the first three

causes of action, the pendent state claims contained in the fourth through seventh causes of action are dismissed for lack of subject matter jurisdiction.

SO ORDERED.