Walter BRIGHT and Ilene Bright, d/b/a Ace Ambulance Service, Plaintiffs-Appellants,

v.

MOSS AMBULANCE SERVICE, INC., a Utah corporation, d/b/a Mountainwest Ambulance Service, Defendant-Appellee.

No. 86–1165.

United States Court of Appeals, Tenth Circuit.

July 27, 1987.

Peter C. Collins, Salt Lake City, Utah, for plaintiffs-appellants.

David S. Kunz of Kunz, Kunz & Hadley, Ogden, Utah, for defendant-appellee.

Before BARRETT, SEYMOUR, and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8(c) and 27.1.-2. The cause is thereby ordered submitted without oral argument.

Walter and Ilene Bright, d/b/a Ace Ambulance (Ace), brought suit against Ogden City, Utah, and a private ambulance service, Moss Ambulance Service, Inc. (Moss), d/b/a Mountainwest Ambulance Service. Plaintiffs alleged violations of federal and state antitrust statutes arising out of the city's grant of a franchise to Moss for the provision of ambulance service within the Ogden City limits. By stipulation, all claims against Ogden City were dismissed. After determining the *Noerr-Pennington* doctrine immunized Moss from liability under Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, the district court granted summary judgment in favor of Moss and dismissed the pendent state claims for lack of subject matter jurisdiction. *Bright v. Ogden City*, 635 F.Supp. 31 (D.Utah 1985). In this appeal, plaintiffs/appellants concede the *Noerr-Pennington* doctrine insulates Moss's franchise-related activities from Section 1 liabil-

ity, but, notwithstanding the operation of the doctrine, they argue Moss's unilateral efforts to expand on its share of the market outside the franchise area violated Section 2 of the act. Accordingly, they contend the district court erred in granting Moss's motion for summary judgment with respect to the Section 2 claims. Because we conclude Moss's alleged predatory acts either fell within the protection of the *Noerr-Pennington* doctrine or were not material to the Section 2 claims, we affirm.

In 1963, Ogden City discontinued its city-operated ambulance service and established a franchise to secure the services of a private ambulance company. After notice and hearings, the city passed an ordinance granting a franchise to Moss for the provision of ambulance service within the city limits. While the franchise was designated "non-exclusive," the ordinance permitted the city to grant a franchise to another ambulance company only if Moss violated the terms of its franchise. Ace and Moss, along with three public entities, provided ambulance service outside the city limits in surrounding Weber County, where no franchise was necessary.

During the ensuing twenty years, appellants and Moss made numerous appearances before the Ogden City city council in connection with the franchise. In 1968, appellant Walter Bright petitioned Ogden City to permit Ace to provide service within the city. After consideration by the city council, the petition was denied based upon the council's determination that the city could not support two ambulance services. When Moss petitioned the city in 1974 to extend its franchise for another ten-year period, Ace again petitioned the city for permission to operate within the city limits. The city council approved the extension of Moss's franchise and denied Ace's petition.

A further extension was granted in 1981. In 1982, Ace petitioned the city council contending Moss was not complying with the provisions of its franchise. After an investigation by the council, Moss agreed to comply with franchise requirements.

Appellants filed this suit in 1983, seeking declaratory and injunctive relief as well as treble damages. In their complaint they alleged that Ogden City and Moss "contracted, combined, and conspired between themselves and with others unreasonably to restrain trade and commerce in the private ambulance service business in and around Weber County, State of Utah, in violation of Section 1 of the Sherman Act" and that Moss attempted to monopolize and "monopolized a part of interstate trade and commerce, in violation of Section 2 of the Sherman Act." After the dismissal of Ogden City, Moss moved for summary judgment on the ground it was immune from antitrust liability under alternative theories: (1) the granting of the ambulance service franchise was a state action beyond the reach of the Sherman Act under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and (2) defendant's conduct in seeking the franchise and its enforcement was exempt from the antitrust laws under the *Noerr-Pennington* doctrine.[1] Appellants moved for partial summary judgment, asking the district court to rule as a matter of law that defendant violated Sections 1 and 2 of the Sherman Antitrust Act and to grant the injunctive and declaratory relief requested.

The district court held that Moss's "actions in connection with obtaining and retaining the ambulance franchise in Ogden City" were "immunized from the reach of federal antitrust laws under the facts of

---

1. Through a series of decisions, the Supreme Court determined certain concerted efforts to influence government officials were exempt from the antitrust laws regardless of anticompetitive purpose. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transp. Co. v. Trucking Unlimited*,

404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The doctrine protects "the open communication between the polity and its lawmakers which is vital to the functioning of a representative democracy" and the "constitutionally protected right of petition." *City of Lafayette, La. v. Louisiana Power & Light Co.*, 435 U.S. 389, 399, 98 S.Ct. 1123, 1129, 55 L.Ed.2d 364 (1978).

this case."[2] 635 F.Supp. at 36. Accordingly, the court denied appellants' motion for partial summary judgment and granted summary judgment in favor of Moss on the federal claims.

The Brights and Ace appeal only the district court's disposition of their Section 2 claims, contending the court erred in granting summary judgment for Moss and in denying their motion for summary judgment that Moss committed the offense of attempted monopolization, as well as the completed offense of monopolization.[3] Through the pleadings and the affidavit of an expert witness, appellants presented the same essential facts and alleged conduct in support of the two offenses. They asserted Moss had monopoly power in the private ambulance service market in Weber County which it attained and maintained by engaging in "exclusionary practices including (a) enforcing and causing to be enforced the precursor of the current Ogden City ambulance franchise ordinance; and (b) causing to be enacted, 'accepting,' and enforcing and causing to be enforced the current Ogden City ambulance franchise." Appellants further alleged Moss attempted to expand its market share in the county by engaging in predatory practices including the operation of a station in Riverdale, Utah, outside the city limits and the instigation of a "leapfrogging" incident in 1982.[4] They contend the district court either failed to consider their expert affidavit evidence and argument that Moss's "unilateral monopolistic" conduct and activities established a Section 2 violation, or it improperly applied the *Noerr-Pennington* doctrine to insulate those activities from the reach of the federal antitrust laws. We disagree based on our determination that the alleged conduct was either protected by the *Noerr-Pennington* doctrine or was immaterial to the offenses proscribed by Section 2.

### I.

The district court held that Moss's attempts to obtain and enforce the franchise agreement with Ogden City were protected by the *Noerr-Pennington* doctrine. Appellants have conceded the legal accuracy of the district court's *Noerr-Pennington* analysis with respect to its Section 1 claims, and they have not advanced any reason why the doctrine should not immunize the same conduct with respect to the Section 2 claims.

Concerted efforts to influence departments of government, including administrative agencies, are protected from the reach of all sections of the antitrust laws regardless of anticompetitive purpose as

---

**2.** Because the district court decided the case on this ground, it declined to address Moss's state action theory.

**3.** Section 2 of the Sherman Act provides:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

While Ace did not plead the two causes of action in the alternative, we note that one cannot be found guilty of both the attempt and the completed offense because the attempt merges into the completed offense. "To say that one who has monopolized has also attempted to monopolize is redundant and adds nothing to the scope of available remedies." Areeda &

Turner III, ¶ 830(e) at 335. However, for the purpose of considering the propriety of the district court's grant of summary judgment in favor of defendant, we determine whether defendant was entitled to judgment as a matter of law under either theory.

**4.** For two and one-half years, from 1979 to 1981, Moss operated the Riverdale station. The location was abandoned before this suit was initiated in 1983. At that time, Moss contends, and appellants do not dispute, Moss operated two ambulance units within the Ogden City limits and maintained one backup unit.

Competition between Ace and Moss was apparently particularly intense in the southern part of Weber County. After the Weber County sheriff's department established a policy of dispatching the closest available ambulance based on station location, Moss moved its station to a location immediately south of Ace's station. Three or four days later, Ace reciprocated by relocating its station south of the new Moss station.

long as the activities are not a sham to cover an attempt to interfere directly with the business relationships of a competitor or to bar competitors from meaningful access to an agency or tribunal. *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 511–12, 92 S.Ct. 609, 612–13, 30 L.Ed.2d 642 (1972). Appellants have not presented a factual question whether Moss's attempts to enforce its franchise corrupted "governmental processes to such an extent that it constituted access-bearing conduct" to justify application of the narrow "sham exception" to the *Noerr-Pennington* doctrine. *Razorback Ready Mix Concrete Co. v. Weaver,* 761 F.2d 484, 487 (8th Cir.1985). By its own account, Ace appeared before the city council of Ogden City on several occasions. There were no allegations that Moss's unilateral lobbying efforts usurped the decision-making process of that body. We therefore conclude the alleged attempts to enforce the ambulance franchise could play no role in supporting appellants' claims of Section 2 violations. The district court did not fail to properly consider these activities in its disposition of the Section 2 claims.

## II.

The issue before us then narrows to the question whether the expert affidavit testimony appellants presented and the remaining evidence of unprotected alleged predatory conduct, specifically Moss's participation in the leapfrogging incident and its operation for two and one-half years of the Riverdale station, preclude summary judgment in Moss's favor on the claims of monopolization and attempted monopolization. Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Because appellants' factual allegations of unprotected predatory conduct are not material to the establishment of their Section 2 claims, we conclude summary judgment was properly entered.

In the determination of a motion for summary judgment, the substantive law defines materiality, governing "which facts are critical and which are irrelevant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Ins. Corp.,* 805 F.2d 342, 346 (10th Cir.1986). The elements of monopolization under Section 2 are "the possession of monopoly power in the relevant market" and "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1519 n. 12 (10th Cir.1984), *aff'd,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985). In this circuit, proof of the offense of attempted monopolization requires the establishment of four factors: (1) relevant market, (2) dangerous probability of success in monopolizing the relevant market, (3) specific intent to monopolize, and (4) conduct in furtherance of the attempt. *Olsen v. Progressive Music Supply, Inc.,* 703 F.2d 432, 436–37 (10th Cir.), *cert. denied,* 464 U.S. 866, 104 S.Ct. 197, 78 L.Ed.2d 172 (1983). The actual distinction between the two offenses is the specific intent requirement in attempted monopolization claims. *Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.,* 679 F.2d 516, 531 (5th Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983).

The possession of power in the relevant market is implicated in both offenses. Monopoly power is a specific element of monopolization. With respect to attempted monopolization, the element of a dangerous probability of success in monopolizing the relevant market is usually demonstrated through the market power of the predator. *Shoppin' Bag of Pueblo, Inc. v. Dillon Companies, Inc.,* 783 F.2d 159, 161–63 (10th Cir.1986). For the Section 2 claims to survive Moss's summary judgment motion, appellants must make a sufficient showing

to establish Moss's monopoly power or market power in Weber County.[5]

In this circuit, monopoly power is defined as the ability to control prices and exclude competition. While the two elements are closely related, both must be demonstrated to establish the existence of monopoly power. *Shoppin' Bag*, 783 F.2d at 164. Appellants presented no evidence of Moss's ability to control prices. With respect to Moss's ability to eliminate competition, appellants advanced the leapfrogging incident and Moss's operation of the Riverdale station as evidence of Moss's attempts to force Ace from the market. These activities fall short of conduct capable of excluding competition. Whether a practice violates the antitrust laws is determined by its effect on competition, not its effect on an individual competitor. *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 825 (6th Cir.1982). Indeed, "the antitrust laws ... were enacted for 'the protection of *competition*, not competitors.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), *quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) (emphasis in original).

In this case, Moss apparently attempted to place itself, to Ace's detriment, in a location ensuring receipt of the greatest number of ambulance service calls. The market in Weber County was apparently limited, as evidenced by the frequent squabbling between Moss and Ace and the numerous complaints made to the sheriff's department. Where a market can only support one successful enterprise, the competitor who recognizes this and intends that his enterprise will be that one and that all others will fail does not necessarily violate the antitrust laws. *Pacific Eng'g & Prod. Co. of Nev. v. Kerr-McGee Corp.*, 551 F.2d 790, 795 (10th Cir.), *cert. denied*, 434 U.S. 879, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977). Therefore, appellants have not made a sufficient showing of monopoly power to support their claim of monopolization.

Appellants' attempt to demonstrate Moss's market power also fails. Appellants presented the affidavit of an economist who examined Moss's share of the market for private ambulance service in Weber County. We recognize in some cases market share may be indicative of market power. *Shoppin' Bag*, 783 F.2d at 161. However, while the affidavit of appellants' expert witness offered the opinion that Moss received 85% of the calls for service in the relevant market, it also stated that 70% of the total demand for private ambulance service in Weber County originated within the city limits of Ogden City.[6] It follows that approximately 82% (70/85 × 100) of the calls for service Moss received were channeled to it by virtue of the franchise agreement with Ogden City. We have held that Moss's conduct in obtaining and enforcing its franchise is immune from the antitrust statutes. Therefore, its enjoyment of the market share devolved from the protected activity cannot support allegations of market power. Furthermore, market share alone is insufficient to establish market power. *Shoppin' Bag*, 783 F.2d at 163; *Broadway Delivery Corp. v. United Parcel Serv. of Am., Inc.*, 651 F.2d 122, 126–29 (2d Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). Appellants advanced no other indicia of Moss's control of the relevant market.

---

**5.** Although market power and monopoly power are conceptually very similar, this court has held that demonstration of market power requires a lesser showing than is necessary to establish monopoly power. *Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1225 n. 3 (10th Cir.1986).

**6.** Appellants complain the district court gave short shrift to their expert's affidavit in light of the fact it was the only offer of expert testimony. With the exception of the facts recited regarding Moss's share of the market, the affidavit contains only reiterations of the allegations in the complaint and conclusions of law. Such allegations are insufficient to show the existence of a triable issue. *Roslindale Coop. Bank v. Greenwald*, 638 F.2d 258, (1st Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 108 (1981); *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir.1975).

Appellants failed to provide evidence sufficient to create a genuine issue of fact on the existence of monopoly power or market power, essential elements of the two offenses alleged in its Section 2 claims. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Therefore, we conclude the district court properly granted judgment in defendant's favor.[7]

AFFIRMED.

---

7. Our resolution of this issue necessarily disposes of appellants' contention the district court improperly denied their motion for partial summary judgment on Moss's liability under Section 2 of the Sherman Act.