## In re AIRPORT CAR RENTAL ANTITRUST LITIGATION.

## BUDGET RENT–A–CAR OF WASHINGTON–OREGON, INC., Plaintiff-Appellant,

v.

## The HERTZ CORP. and National Car Rental System, Inc., Defendants-Appellees.

### No. 81–4399.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 16, 1982.

Decided Nov. 16, 1982.

Rehearing and Rehearing En Banc Denied Jan. 26, 1983.

F. Douglas Ruud, Diamond, Sylvester, Seattle, Wash., for plaintiff-appellant.

Jerome Shestack, Philadelphia, Pa., Daniel R. Shulman, Minneapolis, Minn., argued, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., James Walsh, Pillsbury, Madison & Sutro, San Francisco, Cal., Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., Robert D. Raven, Morrison & Foerster, San Francisco, Cal., on brief, for defendants-appellees.

Francis O. Scarpulla, San Francisco, Cal., Gerald Maltz, Tucson, Ariz., Joseph M. Alioto, San Francisco, Cal., for amicus curiae.

Before CHOY, SNEED and FARRIS, Circuit Judges.

CHOY, Circuit Judge:

This appeal requires us to decide whether the so-called *Noerr-Pennington* exemption from the antitrust laws protects concerted efforts to lobby public officials who operate state-owned airports. We, as did the district court, conclude that it does.

### I. *Facts*

A number of relatively small car-rental companies sued The Hertz Corp., Avis Rent A Car Systems, Inc., and National Car Rental Systems, Inc., on the ground that these industry giants had engaged in a nationwide conspiracy to monopolize the lucrative on-airport car-rental market. The lawsuits were consolidated into a single multidistrict litigation. This appeal concerns only the entry of summary judgment against one plaintiff who alleges misconduct at three airports located in the Pacific Northwest. *See In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568 (N.D. Cal.1981).

■ Budget Rent-A-Car of Washington-Oregon, Inc., claims that Hertz and National lobbied officials at the Seattle-Tacoma, Portland and Spokane International Airports to lease space only to car-rental companies that satisfied a number of very restrictive requirements. The major one compelled the company to pay the airports a rental fee equal to that paid by Hertz, Avis and National. Other requirements included a nationwide credit-card and reservations system, additional car-return stations away from the airport, and a specified number of years experience at a specified number of airports. Hertz and National thus hoped to exclude newcomers from the airports.[1]

---

1. Budget also alleged that Hertz and National engaged in other conduct that *Noerr-Pennington* might not protect: bribing airport officials, *see Rangen, Inc. v. Sterling Nelson & Sons*, 351 F.2d 851, 861–62 (9th Cir.1965), *cert. denied*, 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853 (1966), making bad-faith misrepresentations to the officials, *see Clipper Exxpress v. Rocky*

II. *Discussion*

A. *The Noerr-Pennington Doctrine*

Through a series of decisions,[2] the Supreme Court has exempted from the antitrust laws certain concerted efforts to influence government officials regardless of anticompetitive purpose. The twin pillars upholding the *Noerr-Pennington* doctrine are:

(1) the vital role played by free-flowing communication in a representative democracy, and

(2) the first amendment right to petition the government for the redress of grievances.

*City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 399, 98 S.Ct. 1123, 1129, 55 L.Ed.2d 364 (1978); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972). In order to determine whether *Noerr-Pennington* protects a particular activity, we must evaluate whether exempting it would further these two interests sufficiently to justify overriding the antitrust laws. *See, e.g., Ernest W. Hahn,*

*Inc. v. Codding,* 615 F.2d 830, 842–43 (9th Cir.1977).[3]

In the case before us, Budget asserts that three considerations weaken the interests upholding *Noerr-Pennington.* First, the attempts by Hertz and National to influence airport officials constitute commercial speech, to which the first amendment accords only limited protection. *See Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 562–63, 100 S.Ct. 2343, 2349–50, 65 L.Ed.2d 341 (1980). Second, they petitioned nonelected officials of an agency subordinate to the state legislature or governor. Perhaps free-flowing communication so vital to decisionmaking in a representative body is less important in an administrative agency.[4] While these two considerations are relevant, the Supreme Court has found them insufficient to avoid the application of *Noerr-Pennington.* In *California Motor Transport,* 404 U.S. at 510–11, 92 S.Ct. at 611–12, the Court explained:

> [I]t would be destructive of rights of association and of petition to hold that groups with common interests may not,

---

2. Rather than discuss the formative decisions, as has been done so often, we simply note that they are *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), and *Cantor,* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141.

Mountain Motor Tariff Bureau, Inc., 674 F.2d 1252, 1269–73 (9th Cir.1982), bringing baseless lawsuits against Budget, *see Clipper Exxpress,* 674 F.2d at 1266–67; *Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 840–41 (9th Cir.1980), and submitting illegally fixed prices for car rentals to the officials for their summary approval, *see Cantor v. Detroit Edison Co.,* 428 U.S. 579, 601–02, 96 S.Ct. 3110, 3122–23, 49 L.Ed.2d 1141 (1976) (plurality opinion). Because Budget presented no evidence to support these allegations, the district court properly disposed of them on a motion for summary judgment.

3. When these two interests cannot support the application of *Noerr-Pennington,* it seems insignificant whether we say that the activity fell outside the exemption or, though within its

scope, the activity fell through the "sham exception" to the exemption. In this circuit, the sham exception was initially construed quite narrowly, *see Subscription Television, Inc. v. Southern California Theatre Owners Ass'n,* 576 F.2d 230, 233 (9th Cir.1978); *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers,* 542 F.2d 1076, 1080–81 (9th Cir.1976), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977), but has recently been given broader application, *see Clipper Exxpress,* 674 F.2d at 1262; *Ad Visor, Inc. v. Pacific Telephone and Telegraph Co.,* 640 F.2d 1107, 1109 (9th Cir.1981); *Ernest W. Hahn,* 615 F.2d at 840–42. As we conceded recently: "There is no precise definition to the sham exception." *Id.* at 837 n. 8. We therefore decline to utilize the sham-exception analysis here in our examination of the interests upholding *Noerr-Pennington.*

4. The types of acceptable public input may vary with the nature of the decision making process. In *California Motor Transport,* 404 U.S. at 513, 92 S.Ct. at 613, the Supreme Court noted: "Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process." *Accord, Clipper Exxpress,* 674 F.2d at 1269–73.

without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests *vis-a-vis* their competitors.

Budget asserts, however, that a third consideration vitiates *Noerr-Pennington* protections: the airports are operated essentially as commercial, profit-oriented enterprises. We find little significance in this fact. It is undisputed that the first amendment protects efforts to influence officials making essentially commercial decisions on behalf of a governmental entity. And while some types of public input may be incompatible with profit-oriented decision making, Budget has made no showing that Hertz or National engaged in any such activity at these three airports.[5]

### B. A Commercial Exception to Noerr-Pennington

The exaggerated significance Budget attributes to the operation of the airports as businesses results from its belief that *Noerr-Pennington* does not apply when the government engages in a purely commercial enterprise. In so reasoning, Budget confuses *Noerr-Pennington* with the very different doctrine of state-action immunity recognized in *Parker v. Brown,* 317 U.S. 341, 350–52, 63 S.Ct. 307, 313–14, 87 L.Ed. 315 (1943). *Parker* stands for the proposition that "the federal antitrust laws do not prohibit a State 'as sovereign' from imposing certain anticompetitive restraints 'as an act of government.'" *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 391, 98 S.Ct. 1123, 1125, 55 L.Ed.2d 364 (1978). Thus, whether the State is engaged in a commercial enterprise is relevant in determining the State's liability under *Parker. Id.*

When private parties persuade state officials to effectuate some anticompetitive policy, an antitrust plaintiff might name both the private parties and the State as defendants and thus implicate both *Noerr-Pennington* and *Parker.* Because their liability

is governed by "two separate doctrines," *New Mexico v. American Petrofina,* 501 F.2d 363, 368 (9th Cir.1974), one defendant might be liable and the other exempt. *See City of Lafayette,* 435 U.S. at 399–400 & n. 17, 98 S.Ct. at 1129–1130 & n. 17 (noting the different interests protected by the two doctrines). It would be inapt to require symmetry.

When discussing both doctrines in a single opinion, courts tend to emphasize their similarities. As a result, language in opinions by three courts of appeals seems at first glance to support a commercial exception to *Noerr-Pennington. Hecht v. Pro-Football, Inc.,* 144 D.C.App. 56, 444 F.2d 931, 940–42 (1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); *Woods Exploration & Producing Co. v. Aluminum Co. of America,* 438 F.2d 1286, 1296–98 (5th Cir.1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.,* 424 F.2d 25, 31–34 (1st Cir.), *cert. denied,* 400 U.S. 850, 91 S.Ct. 54, 27 L.Ed.2d 54 (1970). Other courts have noted that these cases may recognize something resembling a commercial exception. *Kurek v. Pleasure Driveway and Park District of Peoria, Illinois,* 557 F.2d 580, 592–93 n. 10 (7th Cir.1977), *vacated and remanded,* 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978); *Sacramento Coca-Cola Bottling Co. v. Chauffeurs, Teamsters and Helpers Local No. 150,* 440 F.2d 1096, 1099 (9th Cir.), *cert. denied,* 404 U.S. 826, 92 S.Ct. 57, 30 L.Ed.2d 54 (1971). One court has even adopted the exception. *City of Atlanta v. Ashland-Warren, Inc.,* 1982–1 Trade Cases ¶ 64,527 at 72,926–29 (N.D.Ga.1981).

It is possible that *California Motor Transport* implicitly overruled *Hecht, Woods* and *Whitten. See Bustop Shelters, Inc. v. Convenience & Safety Corp.,* 521 F.Supp. 989, 996 (S.D.N.Y.1981); *Reaemco, Inc. v. Allegheny Airlines,* 496 F.Supp. 546, 556 n. 6 (S.D.N.Y.1980). Regardless, we do not construe this trilogy to support a commercial exception. All three courts properly

---

5. *See* footnote 1, *supra.*

couched their discussions of *Noerr-Pennington* in terms of the first amendment and the importance of free-flowing communication to government decision making. Their only possible flaw was presuming that decisions implementing rather than formulating policy (sometimes called "nonpolitical activity") do not implicate these two interests sufficiently to invoke *Noerr-Pennington* protection. They did not ignore the interests by creating a commercial exception.

### III. *Conclusion*

 There is no commercial exception to *Noerr-Pennington*. Instead, the nature of the government activity is one factor in determining the type of public input acceptable to the particular decision-making process. Since Budget has given no reason for us to hold that the antitrust laws apply, we conclude that *Noerr-Pennington* exempts the concerted lobbying efforts of Hertz and National from the antitrust laws.

AFFIRMED.