AMERICAN MEDICAL TRANSPORT OF WISCONSIN, INC., Lifeline Ambulance Service, Inc., and Cross Ambulance Service Inc., Plaintiffs-Appellants,†

v.

CURTIS-UNIVERSAL, INC., Paratech Ambulance Service, Inc., Meda-Care Ambulance Service, Inc., R.A. Zehetner & Associates, Inc., and City of Milwaukee, Defendants-Respondents.††

Court of Appeals

*No. 88–0257. Submitted on briefs October 4, 1988.—Decided December 21, 1988.*

(Also reported in 435 N.W.2d 286.)

† Petition to review granted.
†† Petition for cross-review denied.

295

296

For the Plaintiffs-Appellants, the cause was submitted on the briefs of *Quarles & Brady* by *Darryl S. Bell* of Milwaukee.

For the Defendants-Respondents, Curtis-Universal, Inc., the cause was submitted on the briefs of *O'Neil, Cannon & Hollman, S.C.* by *Randall L. Nash* of Milwaukee.

For the Defendant-Respondent, Paratech Ambulance Service, Inc., the cause was submitted on the briefs of *Robert L. Hersh* of Milwaukee.

Before Moser P.J., Sullivan and Fine, JJ.

FINE, J. This case concerns the City of Milwaukee's implementation of an emergency medical service system under Milwaukee Ordinance sec. 75–15, file #83–1503 (1983). Plaintiffs claim that the emergency medical service system violates sec. 133.03(1) and (2), Stats., Wisconsin's analogue to sections one and two of the Sherman Antitrust Act (15 U.S.C. secs. 1 and 2). Additionally, they claim that an advertising sticker concerning the system, which was circulated by all of the defendants except Bell Ambulance, was misleading and violative of sec. 100.18, Stats.

The trial court dismissed the complaint. First, it granted Milwaukee's motion to dismiss the antitrust claims against it, holding that the city was, under the circumstances here, immune from antitrust liability. Second, it granted the defendant ambulance companies' motions to dismiss the antitrust claim against them, holding that they were also immune from antitrust liability. Third, it dismissed the claim involving the allegedly misleading advertisement holding that it was "a true statement."

Milwaukee's emergency medical services system, as authorized by Milwaukee Ordinance sec. 75–15, has a number of key features:

A central dispatch system for the receipt of calls for emergency medical services;

Fire department emergency personnel response to life-threatening emergencies;

Private ambulance response to non-life-threatening emergencies;

Certification of ambulance companies participating in the system;

Uniform fees for ambulance companies participating in the system;

Separate service areas in the city;

Assignment of a certified ambulance company to be the primary provider for a service area;

Assignment of other certified ambulance companies to be back-up providers for a service area;

An Ambulance Service Board to advise the common council's license committee concerning the certification of ambulance companies, the mapping of service areas, and the assignment of ambulance companies to those service areas.

As authorized by the ordinance, Milwaukee was divided into four service areas and a certified ambulance company was assigned as the primary provider for each service area.

The defendant ambulance companies are all certified providers who have been assigned primary responsibility for a service area. The plaintiffs are certified ambulance companies who have been designated as secondary or backup providers. Calls for emergency service made to a central fire department dispatcher are either routed to fire department personnel, if the situation is life-threatening, or to private ambulance companies, if the situation is not life-threatening. The private ambulances are dispatched according to service area: primary providers are called first; if they are busy, a secondary provider is called. As noted, plaintiffs claim that the emergency medical services system under Milwaukee Ordinance sec. 75-15 violates sec. 133.03(1) and (2), Stats.

## I. Antitrust Claims

Plaintiffs seek redress under sec. 133.03(1) and (2), Stats. These provisions were "intended as a reenactment of the first two sections of the federal Sherman Antitrust Act of 1890, 15 USC secs. 1 and 2, with application to intrastate as distinguished from interstate transactions" and the "question of what acts constitute a combination or conspiracy in restraint of trade is controlled by federal court decisions under the Sherman Act." *Grams v. Boss,* 97 Wis. 2d 332, 346, 294 N.W.2d 473, 480 (1980). Plaintiffs' antitrust claims were dismissed on the pleadings. We may not affirm that dismissal unless, looking at the allegations in a light most favorable to the plaintiffs, " 'it appears to a

certainty that no relief can be granted under any set of facts that [they] can prove in support of [their] allegations.'" *Id.* at 352, 294 N.W.2d at 483 (quoting *Morgan v. Pennsylvania Gen. Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660, 664 [1979]).

Plaintiffs' first cause of action alleges that Milwaukee and the defendant ambulance companies "contracted, combined or conspired to restrain trade in ambulance services in the City of Milwaukee." It is an attempt to state a claim under sec. 133.03(1), Stats., which provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal. Every person who makes any contract or engages in any combination or conspiracy in restraint of trade or commerce may be fined not more than $100,000 if a corporation, or, if any other person, $50,000, or be imprisoned for not more than 5 years, or both.

There are two elements to a claim under section 1 of the Sherman Antitrust Act: (1) An agreement among two or more persons or entities (2) that unreasonably restrains competition. *Almeda Mall, Inc. v. Houston Lighting & Power Co.,* 615 F.2d 343, 350 (5th Cir.), *cert. denied,* 449 U.S. 870 (1980).

Plaintiffs' second cause of action is directed against Milwaukee only and alleges that it has monopolized the "emergency ambulance services market" in the city. It is an attempt to state a claim under sec. 133.03(2), Stats., which provides:

> Every person who monopolizes, or attempts to monopolize, or combines or conspires with any other

300

person or persons to monopolize any part of trade or commerce may be fined not more than $100,000 if a corporation, or, if any other person, $50,000, or be imprisoned for not more than 5 years, or both.

There are two elements to a claim under section 2 of the Sherman Antitrust Act: (1) The defendant must have monopoly power in the relevant market and (2) The defendant's acquisition or maintenance of that power must not be the result of "growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.,* 384 U.S. 563, 570–571 (1966).

A. Antitrust Claims Against Milwaukee 

Municipalities, like Milwaukee, are "persons" for the purposes of antitrust liability under secs. 133.03(1) and (2), Stats. Sec. 133.02(3), Stats., *Town of Hallie v. City of Chippewa Falls,* 105 Wis. 2d 533, 537, 314 N.W.2d 321, 324 (1982). Nevertheless, municipalities enjoy freedom from liability for acts that would otherwise violate sec. 133.03(1) and (2), Stats., if "the legislature intended to allow municipalities to undertake such actions" *Id.,* at 539, 314 N.W.2d at 324. Application of this standard requires "an analysis of the home rule powers of cities, the type of conduct undertaken by a city in a particular instance, and the general statutory framework set up by the legislature in the particular field."[1] *Ibid.*

---

[1]The analysis of whether a municipality of Wisconsin enjoys immunity from state antitrust laws thus differs from the analysis of whether the municipality would enjoy similar immunity from federal antitrust laws. The doctrine of state immunity from federal antitrust regulation was first recognized in *Parker v. Brown,* 317 U.S. 341 (1943). It rests on "general principles of federalism

■
Article XI, sec. 3(1) of the Wisconsin Constitution grants cities the power to "determine their local affairs" with the "method of such determination ... prescribed by the legislature." The legislature has given cities broad berth:

> *Except as elsewhere in the statutes specifically provided, the council* shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and *shall have power to act for the government and good order of the city,* for its commercial benefit, *and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression,* borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, *and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.*

involving the relationship of the federal government to the sovereign states, and on the specific constitutional limits on federal power contained in the tenth and eleventh amendments." *Town of Hallie,* 105 Wis. 2d at 537, 314 N.W.2d at 324. *See also 324 Liquor Corp. v. Duffy,* 479 U.S. 335, 343 (1987). Municipalities are immune from federal antitrust regulation only if the challenged action is "'one clearly articulated and affirmatively expressed as state policy'" and that policy is "'actively supervised' by the State itself." *Duffy,* 479 U.S. at 343. Municipalities in Wisconsin thus have broader immunity from state antitrust regulation than they do from federal antitrust regulation.

Sec. 62.11(5), Stats. (emphasis added).[2] This provision was designed to give cities all powers not specifically denied them by either the constitution or statute. *Wisconsin's Envtl. Decade, Inc., v. DNR,* 85 Wis. 2d 518, 532, 271 N.W.2d 69, 75 (1978).

A city's home rule powers are subject to limitations in the constitution and "to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village." Wis. Const. art. XI, sec. 3(1). Thus, a city's home rule powers must give way "when they conflict with matters of state-wide concern." *Town of Hallie,* 105 Wis. 2d at 540, 314 N.W.2d at 325. Although Wisconsin's antitrust statutes are matters of state-wide concern, "this fact alone does not prevent a city from exercising its general home rule powers to provide for an area of legitimate local concern" *Ibid.* The home rule powers will thus not immunize a city's actions from antitrust liability when what the city has done impinges upon, and is in conflict with, matters of state-wide concern. *Ibid.*

Section 75–15 of the Milwaukee Code of Ordinances establishes a comprehensive program to provide emergency ambulance service for the city. Milwaukee's regulation of ambulance services within its borders clearly involves a matter of local, not state-wide,

[2]Provisions of the General Charter Law, secs. 62.01 through 62.26, Stats., are not, with exceptions not relevant here, applicable to cities of the first class under special charter (Milwaukee). Sec. 62.03(1), Stats. Nevertheless, Milwaukee was authorized to adopt, by ordinance, any section of the General Charter Law, sec. 62.03(2), Stats. Milwaukee adopted the home rule provisions in sec. 62.11(5), Stats., by ordinance, Milwaukee, Wis. file #50790 (Feb. 6, 1933).

concern. *Cf. Wisconsin's Envtl. Decade,* 85 Wis. 2d at 530, 271 N.W.2d at 74.

Although a municipality's actions might, on the surface, be sufficiently within an area of local concern to be immune from antitrust regulation, the legislature might still have intended otherwise. Thus, we must examine "the general statutory framework set up by the legislature in the particular field." *Town of Hallie,* 105 Wis. 2d at 539, 314 N.W.2d at 324.

While, as the plaintiffs point out, the Governor vetoed legislation that would have specifically authorized Milwaukee's emergency medical services system,[3] there are no statutes directly affecting Milwaukee's emergency medical services system that indicate legislative intent to narrow the broad grant of authority given to the city under its home rule powers with respect to that system. To the contrary, the legislature has recognized the importance of permitting local units of government to provide for ambulance service within their areas. Thus, secs. 59.07(41) and 60.565, Stats., authorize counties and towns (which do not have home rule powers) to "contract for" ambulance services. Since the system established by Milwaukee Code of Ordinances, sec. 75–15 is clearly within Milwaukee's home rule powers and does not impinge upon or conflict with matters of state-wide concern, Milwaukee is immune from antitrust liability for it. We affirm the trial court's dismissal of the plaintiffs' antitrust claims against Milwaukee.

B. Antitrust Claim Against the Ambulance Companies

---

[3]*See* Letter from Governor Tommy G. Thompson to the Wisconsin Assembly regarding Assem. Bill 750, 1987–88 Leg. (April 23, 1988).

As we have seen, plaintiffs claim that the defendants have violated sec. 133.03(1), Stats., a claim that requires factual averments that there was an unreasonable restraint of competition as the result of an agreement between two or more entities. *Almeda Mall,* 615 F.2d at 350. This is the traditional analysis when the alleged antitrust violations involve private-sector competitors in non-regulated commerce. This case, however, concerns the alleged anticompetitive effect of actions undertaken by the defendant ambulance companies in conformity with municipal regulation. We must therefore determine to what extent, if any, this fact immunizes the ambulance companies from liability under sec. 133.03(1), Stats. If they are exempt from antitrust liability by virtue of Milwaukee Code of Ordinances, sec. 75–15, we need not consider whether the elements of a claim have been stated under sec. 133.03(1), Stats. The question of what impact, if any, municipal regulation has on the application of state antitrust law to actions by private entities is a matter of first impression in Wisconsin.

Generally speaking, governmental regulation of an industry or a market restrains competition in that industry or market. Nevertheless, there are circumstances when regulation is beneficial despite attendant anticompetitive effects. I. P. Areeda & D.F. Turner, *Antitrust Law* paras. 221, 223a–d (1978). Under these circumstances, the anti-competitive aspects of regulation must be reconciled with the pro-competitive mandate of the antitrust laws. *Id.* at para. 223a–d. On the federal level, the United States Supreme Court has recognized an implied repeal of antitrust strictures in order to effectuate Congressional regulatory policy. *Gordon v. New York Stock Exch., Inc.,* 422 U.S. 659, 691

305

(1975). The "repeal," however, is done with a scalpel and not with an ax:

> Repeal is to be regarded as implied only if necessary to make [the regulatory scheme authorized by Congress] work, and even then only to the minimum extent necessary. This is the guiding principle to reconciliation of the two statutory schemes.

*Silver v. New York Stock Exch.,* 373 U.S. 341, 357 (1963). Similar tensions on the state level are similarly resolved. Thus, "an entity cannot be exempted from the state antitrust statute unless the conduct of the entity is within the express provisions of the conflicting [state] statute and then only if its conduct is in furtherance of the conflicting statute's legislatively stated purpose." *Town of Hallie,* 105 Wis. 2d at 538, 314 N.W.2d at 324.

■ This case presents neither a conflict between a federal regulatory statute and a provision of federal antitrust law nor a conflict between a state regulatory statute and a provision of state antitrust law. It also does not present a conflict between a state regulatory statute and federal antitrust law. See *Cantor v. Detroit Edison Co.,* 428 U.S. 579 (1976), which recognized, consistent with the teachings of *Silver* and *Gordon,* that state regulation of an industry does not give immunity from federal antitrust liability unless immunity is necessary to make the regulatory scheme work. *Id.* at 596–598. Rather, this case concerns a conflict between a municipal regulatory ordinance and a state antitrust statute, and we must determine what degree of antitrust immunity, if any, the ordinance affords private entities. We conclude that where the municipal ordi-

nance passes home-rule muster under *Town of Hallie,* the test enunciated in *Silver* governs.

The operative instrument of restraint here is Milwaukee Ordinance sec. 75–15. As we have already seen, Milwaukee's adoption and implementation of the ordinance is immune from antitrust regulation by virtue of its home rule powers. Actions by the defendant ambulance companies that are necessary for the regulatory scheme established by the ordinance to work must be similarly protected. Any other conclusion would totally frustrate a lawful regulatory scheme. Since the complaint does not allege any act by the ambulance companies that is beyond the scope of what is necessary for the emergency medical service system to work, we affirm the trial court's dismissal of the antitrust claim against them.[4]

---

[4]The trial court dismissed the antitrust claim against the ambulance companies on two grounds. First, it held that they were protected from antitrust liability "because they did nothing more than apply under that program and were successful enough in their program to receive certain primary designation in specific geographical districts." Second, it held that the ambulance companies were protected by the doctrine that has emerged from *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657 (1965), which recognizes that groups with common interests may petition government and seek legal redress in the courts and in administrative agencies without incurring antitrust liability. *See California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510–511 (1972). In light of our resolution of the antitrust claim against the ambulance companies, we need not discuss whether the *Noerr-Pennington* doctrine, which protects advocacy and not participation, *see In re Airport Car Rental Antitrust Litig.,* 521 F. Supp. 568, 584 (N.D. Cal. 1981, *aff'd,* 693 F.2d 84 (9th Cir. 1982), *cert. denied,* 462 U.S. 1133 (1983), applies under these circumstances or

## II. Section 100.18, Stats. Claim

Plaintiffs' third cause of action alleges that all of the defendants, except Bell Ambulance, "conspired to publish and distribute throughout the City more than 100,000 copies of an advertisement," a copy of which is set out below:

# CITY OF MILWAUKEE
# FIRE DEPARTMENT
## EMERGENCY ALERT

Enclosed is the new *EMERGENCY* phone sticker for the City of Milwaukee. These are the OFFICIAL emergency telephone numbers AS SEEN ON T.V.

## THESE ARE THE *ONLY* NUMBERS TO USE IN AN EMERGENCY IN YOUR HOME OR PLACE OF BUSINESS ! ! !

Brought to you by:

**Curtis Universal** *AMBULANCE SERVICES*
**Meda-Care** SERVING THE MILWAUKEE
and E.M.S. SYSTEM
**Paratech**

| | PARAMEDICS | |
|---|---|---|
| | AMBULANCE FIRE | **347-2323** |
| | **POLICE** | **765-2323** |

CITY OF MILWAUKEE EMERGENCY NUMBERS

---

whether it is an affirmative defense that must be pleaded. *See* Rule 802.06(2).

The plaintiffs claim the advertisement is inaccurate and misleading in the following respects:

(1) It "falsely purports to be an official City of Milwaukee Fire Department publication, when in fact it was printed, published and distributed by Defendants Curtis-Universal, Meda-Care and Paratech, with the knowledge and acquiescence of certain City officials, but not the Fire Department."

(2) It "falsely states that there is only one phone number to call in all emergencies."

They claim to have suffered unspecified "pecuniary losses" as a result of the advertising sticker's distribution.

Section 100.18(1), Stats., provides, in essence, that no one may sell or promote a service through any advertisement that "contains any assertion, representation or statement of fact which is untrue, deceptive or misleading." As a remedy, persons "suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees." Sec. 100.18(11)(b)2, Stats.

The trial court dismissed plaintiffs' sec. 100.18, Stats., cause of action. Since it considered matters outside of the pleadings it, in effect, granted summary judgment. Rule 802.06(2), Stats. Applying the same summary judgment methodology as the trial court, we must first determine whether the cause of action states a claim and, if it does, whether there are genuine issues of material fact for trial. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314–315, 401 N.W.2d 816, 820 (1987).

We have already noted that a cause of action may not be dismissed for failure to state a claim "unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support" of the allegations. *Morgan v. Pennsylvania Gen. Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660, 664, (1979). Plaintiffs' cause of action alleging a violation of sec. 100.18, Stats., states a claim. Additionally, when reasonable inferences in support of plaintiffs' contentions are considered, the sticker could be construed to be misleading as alleged. *See Rach v. Kleiber,* 123 Wis. 2d 473, 480–481, 485, 367 N.W.2d 824, 828–830 (Ct. App. 1985). There are thus genuine issues of material fact for trial. The trial court's dismissal of plaintiffs' third cause of action is reversed.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded.