AMERICAN MEDICAL TRANSPORT OF WISCONSIN, INC., Lifeline Ambulance Service, Inc., and Cross Ambulance Service, Inc., Plaintiffs-Appellants-Petitioners,

v.

CURTIS-UNIVERSAL, INC., Paratech Ambulance Service, Inc., Meda-Care Ambulance Service, Inc., R.A. Zehetner & Associates, Inc., d/b/a Bell Ambulance, and City of Milwaukee, Defendants-Respondents.

Supreme Court

*No. 88-0257. Argued November 28, 1989.—Decided March 22, 1990.*

(Also reported in 452 N.W.2d 575.)

For the plaintiffs-appellants-petitioners there were briefs by *Darryl S. Bell, David R. Cross, David L. Bourne* and *Quarles & Brady,* Milwaukee and oral argument by *Mr. Cross.*

For the defendants-respondents, Curtis-Universal, Inc. and Paratech Ambulance Service, Inc., there was a joint brief by *Randall L. Nash, Claude J. Krawczyk* and *O'Neil, Cannon & Hollman, S.C.,* Milwaukee, and *Robert L. Hersh,* Mequon and oral argument by *Mr. Nash.*

For the defendant-respondent, Meda-Care Ambulance Service, Inc., there was a brief by *Elizabeth Adelman* and *Adelman & Adelman,* Milwaukee and oral argument by *Elizabeth Adelman.*

For the defendant-respondent, City of Milwaukee, there was a brief by *Scott G. Thomas, Thomas J. Beamish* and *Rudolph M. Konrad,* assistant city attorneys, and oral argument by *Mr. Konrad.*

For the defendant-respondent, R.A. Zehetner & Associates, Inc. d/b/a Bell Ambulance, there was a brief by *Sherman S. Abrahamson* and *Patricia Clifton Smith,* Milwaukee.

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals[1] that affirmed the order of the circuit court for Milwaukee county, Lee E. Wells, Circuit Judge, dismissing the complaint of the plaintiffs against the City of Milwaukee (City) and four private ambulance service providers for alleged violations of the Wisconsin antitrust law, sec. 133.03, Stats. We reverse the decision of the court of appeals and remand to the circuit court for further proceedings, because we conclude that the city of Milwaukee is not immune from antitrust liability under the alleged circumstances, and because we conclude that the individual ambulance companies who are defendants, under the allegations of the complaint, participated with the city of Milwaukee in an unlawful conspiracy to restrain trade.

The plaintiffs in this case are three private companies legally certified to do business in the city of Milwaukee. They are American Medical Transport of Wisconsin, Inc., Lifeline Ambulance Service, Inc., and Cross

---

[1]*American Medical Transport et al. v. Curtis-Universal, Inc., the City of Milwaukee, et al.,* 148 Wis. 2d 294, 435 N.W.2d 286 (Ct. App. 1988).

Ambulance Service, Inc. The plaintiffs have alleged that the city of Milwaukee's adoption of a city-wide emergency ambulance service system pursuant to an ordinance and the defendant ambulance companies' participation in the system violate Wisconsin's antitrust law.

Under the system, the City requires the certification of private ambulance companies as a prerequisite to providing service in the City. All fees and rates for service are set by the City. The Milwaukee Fire Department was designated as the central dispatcher. It receives and allocates all calls for emergency service assistance in the City of Milwaukee. If the emergency is deemed life-threatening, fire department personnel respond to the call, for only the fire department has paramedic personnel. If the emergency is deemed not life-threatening, the fire department dispatcher assigns one of the private ambulance companies to respond.

The City divided the Milwaukee area into four sections designated as service areas. By a process not stated in the complaint, a private ambulance company is assigned primary responsibility for each service area. Thus, only four of seven legally certified ambulance companies were assigned a service area. These four companies, together with the City, are the defendants in this action. The three certified ambulance companies which were not assigned to a designated service area are the plaintiffs.

In the event a non-life-threatening emergency call is received and the designated service company is not able to respond, the fire department dispatcher then assigns one of the three non-designated companies to respond. They are called only as back-up where the designated providers cannot respond. The back-up or support status to which the plaintiffs are relegated is defined by Milwaukee Ordinance sec. 75–15(a) as "[a] status whereby a

certified provider, in lieu of being assigned a service area, receives dispatch calls to which the designated provider within the assigned service area cannot promptly respond."[2]

The plaintiffs, the back-up providers, allege that, by enacting and implementing the ordinance, the defendant city has chosen "to eliminate competition in the emergency ambulance services market," because the arrangement adopted results in almost all calls going to the favored four designated providers.

The plaintiffs allege that, by allocating markets and relegating them to a back-up status, they are deprived of their market share and have sustained, and continue to sustain, economic damages, despite the fact that they are certified ambulance service providers. The plaintiffs allege that the defendants, *i.e.*, City and the favored four providers, "By jointly creating the Section 75–15 system . . . have contracted, combined or conspired to restrain trade in ambulance services in the City of Milwaukee," in violation of sec. 133.03(1), Stats.[3] They also allege

---

[2]Milwaukee Ordinance 75–15(a) became effective on December 23, 1983.

[3] **133.03 Unlawful contracts; conspiracies. (1)** Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal. Every person who makes any contract or engages in any combination or conspiracy in restraint of trade or commerce may be fined not more than $100,000 if a corporation, or, if any other person, $50,000, or be imprisoned for not more than 5 years, or both.

**(2)** Every person who monopolizes, or attempts to monopolize, or combines or conspires with any other person or persons to monopolize any part of trade or commerce may be fined not more than $100,000 if a corporation, or, if any other person, $50,000, or be imprisoned for not more than 5 years, or both.

**(3)** As an alternative to the criminal penalties for violation of this section, the department of justice or district attorney may bring an action for a civil forfeiture. In an action for a civil forfeiture under this subsection a corporation may be required to forfeit not more

that the City, by its conduct, has allocated monopoly power to itself.

An additional count—that the City and the four providers conspired to publish notices, rates, and schedules which falsely represented that ambulance calls could only be placed through the fire department telephone dispatcher—was dismissed by the circuit court. The court of appeals reversed that determination, stating that there were issues of fact that must be determined. The court of appeals remanded on that count for further consideration, and we denied defendants' cross-petition for review of that issue. Accordingly, that allegation of conspiracy to make fraudulent representations is not before us.

In the circuit court each of the defendants brought a motion to dismiss under sec. 802.06(2), Stats., that the complaint failed to state a claim under sec. 133.01, *et seq.,* upon which relief could be granted. The circuit court granted those motions and dismissed the complaint. It concluded that the City was authorized to implement the anticompetitive ordinance under the home-rule authority granted by sec. 62.11(5), Stats., and the rationale of *Town of Hallie v. City of Chippewa Falls,* 105 Wis. 2d 533, 314 N.W.2d 321 (1982). The judge acknowledged that, under the facts, there appeared to be a *per se* restraint of trade but it was not unlawful, because the restraint by the City of Milwaukee was authorized by the home-rule statute. He exonerated the four ambulance companies, because he believed they did nothing more than apply for the designation as providers

than $100,000 and any other person may be required to forfeit not more than $50,000.

It is interesting to note that nowhere in the complaint is sec. 133.03, Stats., cited. All the parties assume, however, that the complaint purports to invoke the provisions of that statute.

141

as set forth in the ordinance, which the judge had already concluded did not provide for an illegal restraint of trade.[4] He decided that, despite sufficient allegations of a combination in restraint of trade, the defendants were "protected" as a matter of law.

The plaintiffs appealed to the court of appeals, which unanimously affirmed the circuit court's order of dismissal. Like the circuit court, the court of appeals concluded, stating that it used the reasoning of *Town of Hallie,* that the home-rule statute in itself provided the necessary legislation to justify the restraint of trade. It concluded that, because no specific statute limited its broad home-rule powers, the City of Milwaukee had the authority to implement the ambulance system despite its anticompetitive effect.

The court of appeals also gave weight to secs. 59.07(41) and 60.565, Stats., applicable to counties and towns, respectively, authorizing them to contract for ambulance services, stating, "[T]he legislature has recognized the importance of permitting local units of government to provide for ambulance service within their areas." 148 Wis. 2d at 304. Thus, although without explication, the court of appeals concluded that these statutes impliedly permitted the City of Milwaukee to enter into anticompetitive contracts. No support was offered for that conclusion. The theory was that the specific statute would have allowed counties and towns to enter into a similar anticompetitive ambulance system. A further assumption was that only because counties and towns did not have home-rule powers was there special legislation necessary in respect to them. But similar authoriza-

---

[4]He also alluded in passing to the plaintiffs' failure to allege in their complaint a combination between the four defendants and the City. This point was not commented upon by the court of appeals. We discuss this issue *infra,* majority opinion at 154.

tion was not required for cities and villages with home-rule powers.[5]

Because the court of appeals held that the general scheme adopted by the City of Milwaukee was within its home-rule powers, it did not find it necessary to discuss the separate liability of the four favored defendants other than holding as a matter of law that, because the ordinance passed home-rule muster and therefore constituted legislatively authorized conduct, the private defendants could not be liable. The court stated, "Actions by the defendant ambulance companies that are necessary for the regulatory scheme [i.e., anticompetitive] established by the ordinance to work must be similarly protected." 148 Wis. 2d at 307. It had no reason to discuss the *Noerr-Pennington* doctrine.[6] 148 Wis. 2d

---

[5]The court of appeals recognized that the City of Milwaukee had attempted to make sure of the legality of its proposed ambulance system by seeking legislation that would specifically validate its anticompetitive ordinance, and that legislation, even in a watered-down version, never became law because of a governor's veto. The court of appeals properly, we conclude, gave little weight to this legislation that did not pass even though this bit of legislative history reveals that the City of Milwaukee's legal department was worried that the ordinance violated the state's antitrust law. We do not believe, however, that the subjective belief of the Milwaukee City Attorney's office in respect to this law is significant. Nor can we conclude that the failure of the bill to pass was because it was the legislative intent to demonstrate that the Milwaukee ambulance ordinance violated antitrust laws. We reach this conclusion even though the governor's veto message stated as one reason for vetoing the bill that this law might have anticompetitive effects. We consider this bit of legislative history to be substantially neutral on the question.

[6]Private ambulance company defendants argued that they were protected by the *Noerr-Pennington* doctrine, *i.e.,* that there could be no liability in circumstances where persons obtained a

at 307, n.4.

On this review of the decision of the court of appeals, we confront the question of that court's correctness in affirming the circuit court's dismissal of the complaint. "In testing the sufficiency of the complaint the facts pleaded by the plaintiff, and all reasonable inferences therefrom, are accepted as true." *Prah v. Maretti,* 108 Wis. 2d 223, 229, 321 N.W.2d 182 (1982). A complaint should be dismissed as legally insufficient "only if 'it is quite clear that under no conditions can the plaintiff recover.' " *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985). The court of appeals correctly stated:

> We may not affirm that dismissal unless, looking at the allegations in a light most favorable to the plaintiffs, "it appears to a certainty that no relief can be granted under any set of facts that [they] can prove in support of [the plaintiffs'] allegations."

148 Wis. 2d at 299–300.

"The purpose of the motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint." *Evans, supra* at 426.

The question is whether, as a matter of law, giving the facts a liberal interpretation in favor of the plaintiffs, the City and the four favored ambulance companies are, as a matter of law, immune from state antitrust liability.

The court of appeals correctly stated the standard for review, but we conclude it erred as a matter of law by misinterpreting what is clearly the controlling opinion:

competitive advantage by exercise of their free-speech prerogative to petition the legislature for special status. *See, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657 (1965).

*Town of Hallie v. City of Chippewa Falls,* 105 Wis. 2d 533, 314 N.W.2d 321 (1982).

It should be noted that *Town of Hallie* relied entirely upon state law. While that decision recognized that sec. 133.03, Stats., is Wisconsin's version of the Sherman Act in defining and prohibiting unlawful restraints on trade, and that federal law is persuasive in that respect, the particular defense asserted in *Town of Hallie,* the *Parker v. Brown*[7] or "state action" defense under federal law was held to be inapplicable. The City in *Town of Hallie* argued that the state-action immunity under the federal law was analogous to the claimed immunity from state antitrust law because the city's conduct was the result of its legislative action. The court pointed out that "state action" was immune from federal antitrust law, because of the general principles of federalism that control the relationship of the government of the United States with the sovereign states, and "on the specific constitutional limits on federal power contained in the tenth and eleventh amendments," citing Note, *"Parker v. Brown* Revisited: The State Action Doctrine After *Goldfarb, Cantor* and *Bates,"* 77 Columbia Law Review 898, 899 n. 6 (1977). 105 Wis. 2d at 537.

The *Town of Hallie* court said it was not the intent of the federal government to control state public policy through the federal antitrust laws. Hence, under *Parker v. Brown, supra,* if a municipality were acting under state authority, its action would be state action and not subject to federal antitrust law.

Chief Justice Beilfuss, writing for a unanimous court in *Town of Hallie,* carefully pointed out that there is no independent sovereignty in respect to the relations of a municipality and the state. "Cities are creatures of

---

[7]317 U.S. 341 (1943).

the state, derive their power from it, and are not recognized as independent sovereigns." 105 Wis. 2d at 539. Although the *Town of Hallie* court distinguished the defense offered by the city from the *Parker v. Brown* defense, it acknowledged a similarity in basic rationale.

*Town of Hallie* adopted the language of Milton Handler,[8] and stated that "the overriding issue in cases like *[Town of Hallie]* is 'the reconciliation of two ostensibly conflicting enactments of a *single* sovereign . . .. The job quite simply is to ascertain, as best as can be, the intent of the legislators.' " 105 Wis. 2d at 538.

*Town of Hallie* adopted the methodology to be utilized where municipal corporations are involved: "When dealing with actions by municipalities, we hold that the test as to the applicability of the state antitrust law is whether the legislature intended to allow municipalities to undertake such actions." 105 Wis. 2d at 539.

Thus, we confront a question of statutory interpretation. We follow the methodology set forth in *Town of Hallie,* taking into consideration "the home rule powers of cities, the type of conduct undertaken . . . and the general statutory framework set up by the legislature in the particular field." 105 Wis. 2d at 539.

The Wisconsin home rule amendment to the constitution, art. XI, sec. 3(1), provides:

> **(1)** Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature.

---

[8]Handler, "Antitrust—1978," Columbia Law Review 1363, 1378 (1978).

Section 62.11(5), Stats., the statutory home rule statute, provides:

> **(5)** Powers. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.

It is apparent the powers of a municipality to determine its local affairs are broad indeed; but, as the constitution makes clear, the broad grant of constitutional authority is subject to "enactments of the legislature of statewide concern as with uniformity shall affect every city or every village."

The court of appeals in the instant case appeared to consider that some actions of a city "might . . . be sufficiently within an area of local concern to be immune from antitrust regulation." 148 Wis. 2d at 304. We think this improperly emphasizes the primacy of local concern. A plain reading of the constitutional provision reveals that it is precisely the areas of local affairs that will be superseded by legislation of statewide concern. Only if there is no legislation of statewide concern on the particular subject is the city afforded primacy to manage its local affairs in that respect.

As *Town of Hallie* points out, we look to the legislation that is of statewide concern; and unless there is

147

evidence that it was the legislative intent to make that legislation not applicable to localities by authorizing contrary or inconsistent conduct by the city, the state-wide law controls as a matter of legislative intent.

*Town of Hallie* makes clear, and we reaffirm that holding, that sec. 133.03 *et seq.,* the Wisconsin antitrust law, is legislation of statewide concern that with uniformity affects every city and village. Accordingly, unless it can be said that the legislative scheme is at least impliedly of a nature to authorize the anticompetitive conduct of the city, the City of Milwaukee has, if the factual allegations are proved, violated the Wisconsin antitrust law. The antitrust law manifestly indicates a legislative intent to subordinate the city's home-rule authority to its provisions.

The additional question is whether the legislature has impliedly authorized an exception from the antitrust laws in respect to certain types of conduct. Although Milwaukee ordinance sec. 75-15 is within the home-rule powers conferred by sec. 62.11(5), Stats., the exercise of that power by an admittedly anticompetitive ordinance, contrary to the conclusion of the court of appeals, is in direct conflict with a law of statewide concern, unless there are implied exceptions that may insulate the conduct of the City. The question is whether there is any evidence extraneous to the antitrust statutes that indicates the legislature did not intend their application.

In *Town of Hallie,* this court looked to other statutory enactments to conclude that the legislature did not intend to curtail the City of Chippewa Falls' ability to tie in the grant of sewer services, when obliged to provide such services, with a proceeding to annex to the city the areas to be served. *See Town of Hallie,* 105 Wis. 2d at 541.

148

Following that same methodology, we examine some of the legislation extraneous to the antitrust statute that might guide us in determining legislative intent. Is there evidence that can reasonably lead to the conclusion that the legislature would consider an anticompetitive ordinance such as sec. 75–15 reasonable and not violative of the antitrust statutes?

With this purpose in mind, we look to other statutes to determine whether the legislature contemplated the type of anticompetitive activity engaged in by the City of Milwaukee. In addition to their home-rule power pursuant to art. XI, sec. 3(1), of the Wisconsin Constitution and sec. 62.11(5), Stats., defendants rely on a number of statutes which they claim show the legislative authorization for their ambulance service system. They cite secs. 59.07(41) and 60.565, Stats., which authorize counties and towns (which do not have home-rule authority) to operate emergency medical services:

> Section 59.07 General powers of [county] board. **(41)** Ambulances. Purchase, equip, operate and maintain ambulances and *contract for* ambulance service for conveyance of the sick or injured and make reasonable charges for the use thereof. [Emphasis supplied.]
>
> Section 60.565 Ambulance service. The town board shall *contract for* or operate and maintain ambulance services unless such services are provided by another person. The town board may purchase equipment for medical and other emergency calls. [Emphasis supplied.]

The City argues that the reason the legislature passed these statutes was to grant the authority to counties and towns which had already been granted to cities through their home-rule powers. Defendants add that it would be absurd to allow counties and towns to contract

for ambulance service systems while prohibiting cities from doing the same thing. In addition, the City relies on secs. 146.35(3) and 146.50(9), Stats., which contemplate operation of emergency medical services by a municipality.[9] The city also points to sec. 146.70 which authorizes municipalities to create a centralized emergency telephone system or "911" system, which may also have anticompetitive effects on the provision of emergency services.

The court of appeals was persuaded that secs. 59.07(41) and 60.565, Stats., showed that the legislature contemplated the type of anticompetitive ambulance service system developed by the City. 148 Wis. 2d at 304. The court of appeals relied on the "contract for" language of these statutes. While these statutes clearly

---

[9]Section 146.35(3), Stats., provides:

(3) Emergency medical services programs. Any county, municipality, hospital or combination thereof may, after submission of a plan approved by the department, conduct a program utilizing emergency medical technicians—advanced (paramedics) for the delivery of emergency medical care to the sick and injured at the scene of an emergency and during transport to a hospital, while in the hospital emergency department, and until care responsibility is assumed by the regular hospital staff. Nothing in this section shall be construed to prohibit the operation of fire department, police department or other emergency vehicles utilizing the services of emergency medical technicians—advanced (paramedics) in conjunction with a program approved by the department. Hospitals which offer approved training courses for emergency medical technicians—advanced (paramedics) should, if feasible, serve as the base of operation for approved programs utilizing emergency medical technicians—advanced (paramedics).

Section 146.50(9), Stats., provides for free training by the Department for any person who holds an ambulance attendant license or an ambulance service provider license and who is an employee of a county, city, village, or town.

authorize local government units to contract for ambulance service in the manner therein specified, we cannot conclude that these statutes authorize the anticompetitive, monopolistic regulation adopted by the City of Milwaukee. Although municipalities have the authority to provide ambulance services to its citizens, they are still required to do so in the most competitive manner feasible. The importance of competition in a free society was well stated in the opinion of the United States Supreme Court in *City of LaFayette v. Louisiana Power & Light Co,* 435 U.S. 389, 398, n.16 (1978): "Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise." In an equally emphatic statement, our Wisconsin legislature has required us to interpret the antitrust laws in a manner that will promote a maximum level of competition:

> **133.01  Legislative intent.** The intent of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition. It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition. It is the intent of the legislature to make competition the fundamental economic policy of this state and, to that end, state regulatory agencies shall regard the public interest as requiring the preservation and promotion of the maximum level of competition in any regulated industry consistent with the other public interest goals established by the legislature.

Thus, as a matter of general state policy, explicitly declared by the legislature, we should not lightly reach the conclusion that monopoly or restraint of trade is

151

authorized by extraneous statutes that do not quite clearly indicate that intent—an intent made clear by the statutes relied upon in *Town of Hallie. See, Town of Hallie,* 105 Wis. 2d 541, n.5 and n.6.

In the first place, we cannot reasonably conclude that the authority of towns and counties to "contract for" ambulance services evinces a legislative intent to contract in a way that leads to monopoly or restraint of trade. The defendants, without justification, would have us adopt the predicate that the legislation in respect to towns and counties authorizes governments of those classifications to legally engage in the same type of regulation and restraint as practiced by the City of Milwaukee. We do not in this case have reason to examine whether ambulance service contracts entered into by towns and counties are violative of antitrust statutes. However, we cannot assume, in the present posture of this case, that sec. 59.07(41) and sec. 60.565, Stats., permit those governmental entities to contract for ambulance services in an anticompetitive manner. Thus, even if the legislature passed these statutes to fill the void in the powers of towns and counties, because they did not otherwise have authority to enter into ambulance service contracts, we cannot conclude that anticompetitive practices were validated by the legislature and, by *ipse dixit,* conclude the same anticompetitive practices are appropriate for cities under their home-rule power.

While we decide the question of the City's liability or immunity from the Wisconsin antitrust law on the basis of Wisconsin law alone, federal antitrust cases may, however, in many cases, be instructive and persuasive. *Gold Cross Ambulance and Transfer v. City of Kansas City,* 705 F.2d 1005 (8th Cir. 1983), involved a question of immunity under the doctrine of *Parker v. Brown, supra.* The federal court looked to the enabling legisla-

tion to determine whether it was the legislative intent that state action displace competition. It found that explicit state policy by language in the statute, "to contract with *one* or more" (emphasis supplied) ambulance company operators. 705 F.2d at 1011. Because there was specific legislative authority to contract with *one* operator, the federal court considered this to be action of a sovereign state to validate a monopoly. The statutes posed by the defendants in this case which they assert authorize anticompetitive practices lack the specificity of the Missouri statute and, hence, under the general policy provisions of sec. 133.01, Stats., favoring competition, we cannot reasonably construe these statutes as displacing competition sought to be assured by the legislative guarantees of the antitrust statute. Our examination of the opinion of the court of appeals leads us to conclude the court of appeals did not give due weight to the strong procompetitive admonitions of sec. 133.01 in evaluating the effect of these statutes.[10]

We conclude that the plaintiffs have stated a claim upon which relief can be granted. The conduct alleged to have been engaged in by the City is anticompetitive and, if the facts alleged can be proved, relief may follow. The arguments made by the defendant City that the anticompetitive conduct was contemplated and approved by the legislature and, hence, was not violative of the Wisconsin antitrust law cannot be supported after

---

[10]We also question the court of appeals assertion, p. 302, n.1, that cities have more leeway for anticompetitive conduct under state law than under federal law. The strong statement of Wisconsin legislative policy in favor of competition in sec. 133.01, Stats., tends to lead to the opposite conclusion. *See,* Comment, "Municipal Antitrust Liability After *Town of Hallie v. Eau Claire,*" 1986 Wisconsin Law Rev. 1039, 1058.

an analysis of the legislative pronouncements that the City insists validates its action. The decision of the court of appeals affirming the dismissal of the complaint against the City, therefore, must be reversed.

The dismissal of the claim against the favored four ambulance companies presents a different question. The court of appeals was able to facilely affirm the dismissal of the complaint against the private defendants because its analysis led to the conclusion that they were not participants in a combination or conspiracy in restraint of trade—that the conduct of the City and those who participated in that conduct were acting in accordance with the intent of the legislature and, hence, were immune from sanctions.

Because we hold that a claim of an antitrust violation was stated against the City, we cannot dispose of the claims against the individual ambulance service companies in that way.

The posture in respect to them is that they participated with the City in illegal conduct. It is, however, asserted that they are protected by what the federal courts refer to as the *Noerr-Pennington* doctrine derived from *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657 (1965). See n.6, *supra.* Essentially, these cases protect the right of free speech and, particularly, the right to petition government—even to petition government to enact anticompetitive legislation that will benefit the petitioner. While the doctrine arose in a federal context, the constitutional concerns and right to petition government are equally applicable under state law.

The court of appeals correctly stated the applicable law when it said that the "*Noerr-Pennington* doctrine

154

. . . protects advocacy and not participation." 148 Wis. 2d 294, 307, n.4.

*Airport Car Rental Antitrust Litigation,* 521 F. Supp. 568, 584 (N.D. Cal. 1981), *aff'd* 693 F.2d 84 (9th Cir. 1982), capsulized the limits of the *Noerr-Pennington* doctrine when it stated:

> Private parties attempting to influence public officials to engage in commercial activities which may later be found to violate the antitrust law do not thereby become themselves liable. For liability to be imposed upon them, they must be *participants* in the scheme. [Emphasis supplied.]

■

Thus, it is clear that, if a scheme or enterprise that has been merely petitioned or lobbied for by private persons is found to violate antitrust laws, liability will not be imposed on those private persons for that conduct alone. *See,* P. Areeda, H. Hovenkamp, *Antitrust Law,* para. 201, p. 21 (Supp. 1989).

There have been no cases brought to our attention or which we have discovered in the course of this court's research where a private party who has participated in an anticompetitive scheme is exonerated by *Noerr-Pennington.* This absence of authority fully accords with the basic premise of *Noerr-Pennington*—to protect the citizens' right to free speech and to petition government. It goes no further than that.

Accordingly, if we can conclude that the allegations of the complaint may be construed to allege participation in an illegal restraint of trade, a cause of action is spelled out against the ambulance company defendants.

Paragraph 18 of the complaint alleges:

> By jointly creating the Section 75-15 system . . . the Defendants have contracted, combined or

<br/>

conspired to restrain trade in ambulance services in the City of Milwaukee.

As pointed out earlier in this opinion, all reasonable inferences that can be drawn from the words of the complaint may be used by a court in determining whether a claim has been stated upon which relief can be granted. Dismissal cannot be affirmed unless, looking at the allegations in a light most favorable to the plaintiffs, "it appears to a certainty that no relief can be granted under any set of facts that [they] can prove in support of [their] allegations." *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660 (1979).

We conclude that a reasonable inference to be drawn from the allegations of Paragraph 18 is that the defendant ambulance companies did more than petition government. They participated in an illegal restraint of trade. Whether such allegations can be proved must abide the trial of this case, but we conclude that a reasonable inference from the complaint is that the individual ambulance provider defendants cannot, at this juncture, claim exoneration because their only conduct was to exercise their right of free speech. There may, of course, come a time that, under the facts, the state equivalent of the *Noerr-Pennington* doctrine may be reasserted, but the complaint—as we conclude a reasonable interpretation requires—forecloses that defense as a matter of law at this juncture. Accordingly, we reverse the decision of the court of appeals which affirmed the circuit court's dismissal against the defendant private ambulance providers.

*By the Court.*—Decision of the court of appeals in respect to the matters reviewed is reversed and the cause is remanded to the circuit court for trial.